1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

7

8

Gina Jeannette Dumont,
Petitioner
-vs-
David Shinn, et al.,
Respondents.

CV-22-8192-PCT-JAT (JFM)

9

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

10

11

## I.  MATTER UNDER CONSIDERATION

12

Petitioner has filed a Second Amended Petition for Writ of Habeas Corpus pursuant

13

to 28 U.S.C. § 2254 (Doc. 21).  The Petitioner's Petition is now ripe for consideration.

14

Accordingly, the undersigned makes the following proposed findings of fact, report, and

15

recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b),

16

Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of

17

Civil Procedure.

18

19

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL BACKGROUND

20

"[V]iewing the facts in the light most favorable to sustaining the verdict," the

21

Arizona Court of Appeals described the factual background when ruling on Petitioner's

22

direct appeal.  (Exh. L, Mem. Dec. 3/14/19 at ¶¶ 2-7.)[1]

23

24

¶2      The victim, C.C., went to defendant's home to discuss a small
amount of "gas money" defendant owed her. Defendant allowed C.C.
to go inside, but she appeared to be erratic and upset. After a brief

25

26

27

28

_____

[1] Exhibits to the current Answer (Doc. 22) to the Second Amended Petition and to the
Answer (Doc. 13) to the First Amended Petition (as incorporated by reference) are labelled
in a single series and are referenced herein as "Exh. ___."  Exhibits to the Reply are
referenced herein as Exhibit "R-___."  Exhibits to the Supplemental Answer (Doc. 44) are
referenced herein as Exhibit "S1-___."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

conversation, defendant directed her dog to bite C.C., retrieved a baseball bat, and swung it at C.C.'s head. In an effort to shield herself, C.C. raised her right hand and the bat struck her right arm. C.C.'s husband, who was waiting outside, helped C.C. leave the home. As they fled, defendant threw rocks and continued ordering her dog to bite C.C. C.C. hit the dog with a nearby broomstick and left in her vehicle.

¶3      C.C. contacted police officers. The responding officer observed that C.C. was distressed and had injuries consistent with dog bites and "blunt force trauma" to her right arm. C.C. declined medical support, opting to treat her injuries at home.

¶4      When the officer went to defendant's home with an animal control representative, defendant screamed derogatory statements and refused to provide a statement. The officer spoke with defendant through a screen door and did not observe any injuries.

¶5      The next morning, C.C. woke to discover she lost blood flow to her right hand and went to the emergency room. C.C. suffered a severe injury to her right arm and doctors nearly amputated her hand. C.C. underwent a total of three surgeries and has "over a hundred staples holding [her] arm together." Photographs were taken of her injuries.

¶6      C.C. obtained an order of protection against defendant. Before it could be served, defendant left voicemails for C.C., asking her to tell officials she was mistaken regarding the dog bites.

¶7      Defendant later testified that C.C. came into her home uninvited and attacked her. She claimed that she used the baseball bat to defend herself and also testified that C.C. rummaged through her drawers and briefly removed a knife from the silverware drawer. Defendant acknowledged, however, that she did not call police officers or provide them with her complete version of the incident.

16

(*Id.* at ¶¶ 2-7.)

17
18

**B. PROCEEDINGS AT TRIAL**

19
20
21
22

On January 12, 2017, Petitioner was indicted in Mohave County Superior Court on one count of aggravated assault with a deadly weapon, one count of aggravated assault with serious injury, and one count of witness tampering.  (Exh. A, Indictment; Exh. L, Mem. Dec. 3/14/19 at ¶ 8.)

23

Petitioner proceeded with counsel to a jury trial.

24
25
26
27
28

At trial, defendant and C.C. provided widely differing versions of the incident and, aside from their testimony, the only other evidence presented at trial corroborated C.C.'s account. Defendant claimed both self-defense and defense of premises, and the court provided the correlating instructions. See A.R.S. §§ 13-404 (2019) (use of physical force in defense of oneself), -407 (2019) (use of force to terminate criminal trespass of a residential structure). As to each defense, the jury was told the State must prove beyond a reasonable doubt that defendant was not justified in her actions.

(Exh. L, Mem. Dec. 3/14/19 at ¶ 16.)  Petitioner did not request, and the trial court did not issue, instructions on "(1) the use of force in preventing others from committing enumerated crimes under A.R.S. § 13–411 (2019); (2) the lack of duty to retreat afforded by A.R.S. § 13-405(B) (2019) and A.R.S. § 13-411(B); and (3) the presumption of reasonableness afforded by A.R.S. § 13–419 (2019)."  (*Id.* at ¶¶ 15, 14.)

> ¶20    In closing argument, defense counsel argued that the jury could consider the fact that the prosecutor failed to call C.C.'s husband in its deliberations. In rebuttal, the prosecutor argued defense counsel asked them to consider facts not in evidence, contrary to the law provided in their instructions. Defense counsel objected to the prosecutor "commenting on opposing counsel," but the objection was overruled.

(Exh. L, Mem. Dec. 3/14/19 at ¶ 20.)

The jury convicted on the aggravated assault counts, finding both to be "dangerous offenses," but acquitted on the witness tampering.  (Exh. F, Verdicts; Exh. L, Mem. Dec. 3/14/19 at ¶ 8.)  Petitioner was sentenced to an aggregate term of 8.5 years in prison (concurrent sentences of 8.5 years on Count 1 and 6 years on Count 2), and 14 months of community supervision.[2]  (Exh. G, RT 12/27/17 at 17-19; Exh. L, Mem. Dec. 3/14/19 at ¶ 8.)

## C.  PROCEEDINGS ON DIRECT APPEAL

On direct appeal, appellate counsel filed an Opening Brief (Exh. I) asserting claims of instructional error regarding various defenses, insufficient evidence, and prosecutorial misconduct in closing arguments.  The Arizona Court of Appeals found the claims to be without merit, and affirmed Petitioner's convictions and sentences.  (Exh. L, Mem. Dec. 3/14/19.)

Petitioner did not seek further review.  (Exh. L, Mandate 4/26/19.)

/ /

---

[2] In Arizona, a term of community supervision is consecutive to any prison term, and is served upon release from prison, "either upon the earned release date or the expiration of the sentence."  *State v. Jenkins*, 193 Ariz. 115, 119, 970 P.2d 947, 951 (Ct. App. 1998). *See also* Ariz. Rev. Stat. § 13-603(i) and Ariz. Rev. Stat. § 41-1604.07(E).

1

**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

On May 7, 2019 Petitioner commenced a post-conviction relief proceeding by filing a PCR Notice (Exh. M).   PCR counsel filed a PCR Petition (Exh. N) asserting a variety of claims of ineffective assistance of trial and appellate counsel, and a claim of newly discovered evidence.   The PCR court rejected all the claims as without merit.  (Exh. Q, Order 4/29/20.)

Petitioner filed, through counsel, a Petition for Review (Exh. R) based solely on claims of ineffective assistance of trial counsel at sentencing.   The Arizona Court of Appeals granted review but denied relief.  (Exh. S, Mem. Dec. 4/8/21.)

Petitioner filed a *pro per* Petition for Review (Exh. T) with the Arizona Supreme Court, which summarily denied review on October 12, 2021 (Exh. U.)

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**
**1.  Petition**

**Original Petition** - Petitioner, incarcerated at the time[3] in the Arizona State Prison Complex, Perryville at Goodyear, Arizona, commenced the current case by filing her Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 14, 2022 (Doc. 1), asserting nine claims. (Doc. 1 at 7-15.) In the Court's Service Order, the Court identified only the first four.

> In Ground One, Petitioner alleges the court committed fundamental reversible error by **failing to instruct the jury on a justification defense**, which violated her constitutional right to a fair trial. In Ground Two, Petitioner alleges there was **insufficient evidence** to support the jury's verdict. In Ground Three, she alleges the prosecutor engaged in **misconduct during closing argument** by telling the jury it could draw no inference from Petitioner's husband's absence at trial and unconstitutionally shifted the burden of proof from the State to Petitioner. In Ground Four, Petitioner alleges that she received the **ineffective assistance of trial counsel** by failing to

---

[3] Petitioner was apparently released from prison on or about July 22, 2024.  (*See* Not. Chg. of Address, Doc. 48.)   Presumably, Petitioner will remain in custody under community supervision  until her 14 month term of supervision expires.   Respondents make no assertion that the "in custody" requirement, *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989), is not met, or that Petitioner's claims (including her claims affecting her sentencing) have been rendered moot, *see Cox v. McCarthy*, 829 F.2d 800, 803 (9th Cir. 1987).

- 4 -

1    object to a police officer's opinion about the cause of the victim's injury.

2    (Order 1/6/23, Doc. 5 at 2.)

3    **Attempted Amendment** - On February 21, 2023, Petitioner filed an "Amended

4    Grounds Five Through Nine" (Doc. 11).  The Court struck that filing on the bases that: (1)

5    it was an improper piecemeal amendment, and Petitioner did not appear to intend to delete

6    Grounds One through Four; (2) it failed to fully use the approved form; and (3) Petitioner

7    failed to comply with LRCiv 15.1(b) (requiring redlined copy of amendment).   In issuing

8    that ruling, the Court relied upon the determination in the Service Order that there were

9    only four grounds for relief in the original Petition.  (Order 2/22/23, Doc. 12.)  In light of

10   the actual number of grounds (nine) in the original Petition, the Court's reasoning in this

11   Order nonetheless remains valid.

12   **First Amended Petition** - On April 3, 2023, Respondents filed their Answer (Doc.

13   13).  On April 4, 2023 Petitioner filed a new Amended Petition (Doc. 15).  Petitioner had

14   not sought leave to amend, and the Court accepted this as an amendment as a matter of

15   right pursuant to Fed. R. Civ. P. 15(a)(1)(B).  This amendment again asserted only Ground

16   Five through Nine.  Because the Court had in its earlier Order (Doc. 12) alerted Petitioner

17   to the effect of such an amendment, the Court concluded Petitioner intended to delete

18   Grounds One through Four, construed Grounds Five through Nine, and ordered an answer

19   to the First Amended Petition (Doc. 15).   (Order 4/11/23, Doc. 16.)

20   **Second Amended Petition** - On April 24, 2023, Petitioner filed a "Motion to

21   Extend Time to Reply to Petition for Writ of Habeas Corpus" (Doc. 17), in which

22   Petitioner sought to revive her original Petition (Doc. 1) and proceed on all the original

23   grounds for relief, have the Court rely on the original Answer (Doc. 13), and grant an

24   extension of time to reply.  The Court vacated the deadline for an answer to the First

25   Amended Petition and construed this Motion to seek leave to refile the original Petition

26   (Doc. 1) as the operative Petition.  (Order 4/26/23, Doc. 18.)

27   The Court granted that motion on June 11, 2023, adopted the construction of

28   Grounds 1 through 4 from the service Order (Doc. 5), and construed the balance as

asserting the following claims:

- In Ground Five Petitioner asserts trial counsel was ineffective in failing to question petitioner about, investigate, or argue Petitioner's mental illness at trial or on sentencing.
- In Ground "Six" Petitioner asserts trial counsel was ineffective for not investigating, presenting evidence on, and challenging the prosecution's evidence on the extent of the victim's injuries.
- In Ground "Seven" Petitioner argues appellate counsel was ineffective in: (7A) failing to request fundamental error review of improper testimony by Turnbull; and (7B) failing to challenge the trial court's failure to consider Petitioner's mental illness as mitigation or as a justification offense.
- In Ground "Eight" Petitioner purports to assert a claim of "newly discovered evidence."[4]   The facts alleged by Petitioner, however, assert the following claims: (8A) trial counsel was ineffective in failing discover and present Dr. Schiff's Rule 11 evaluation and diagnosis of Petitioner's mental health, and mental health records from Desert Parkway Mental Health Hospital. (which existed at trial but was discovered only after trial); and (8B) appellate counsel was ineffective in failing to discover and present this evidence.
- In Ground "Nine" Petitioner asserts PCR counsel was ineffective for dismissing from her PCR petition for review all claims other than those related to a request for resentencing and Petitioner's mental illness.

(Order 6/11/23, Doc. 20 at 3-4.)   The resulting Second Amended Petition (Doc. 21) is the operative petition.[5]

## 2. Answer

On July 6, 2023 Respondents filed their Answer (Doc. 22) to the Second Amended Petition, incorporating by referenced the Exhibits (A to U) to the original Answer (Doc. 13), and attaching a new Exhibit V.  Respondents subdivide Ground 5 into two claims of ineffective assistance of trial counsel regarding Petitioner's mental health: (A) at trial; and

---

[4]  "Newly discovered evidence is a ground for habeas relief only when it bears on the constitutionality of an appellant's conviction and would probably produce an acquittal." *Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999). The allegations in Ground 8 do not support such a claim.  The court, however, is obligated to construe Petitioner's pro se petition liberally, applying the law suggested by the facts which presents the strongest argument in favor of relief.  *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).  The claims in Grounds 8A and 8B provide the strongest argument on the facts alleged.

[5] Petitioner subsequently filed a Motion to Amend to raise a new claim of double jeopardy (Doc. 38).  That motion was denied without prejudice as untimely, and without moving to amend the deadline for amendments.  (Order 1/2/24, Doc. 40.)  Petitioner has not since again attempted to amend.

(B) at sentencing. Respondents similarly subdivide Ground 6 into two claims of ineffective assistance of trial counsel regarding the victim's injuries: (A) at trial; and (B) at sentencing. Respondents argue Petitioner has procedurally defaulted her state remedies on Grounds 4, 5A, 6A, 6B, 7A, 7B, 8A, 8B, and 9. Respondents argue Grounds 1-3 and 5B are without merit.[6]

### 3. Reply

Because Respondents relied upon a failure to properly exhaust state remedies, the Court set a date certain for a reply and directed:

> Any assertions in the reply that Petitioner's claims were fairly presented to the state appellate courts must be supported by specific references to the location of the presentation of the claim, i.e. by exhibit number/letter in the record of this proceeding, document name, date of filing with the state court, page(s)/ line number(s) (e.g. "Exh. A, Petition for Review, filed 1/1/15, at 1/17 – 2/23").

(Order 7/14/23, Doc. 23 at 1.)

On December 11, 2023, Petitioner filed her Reply (Doc. 37). Petitioner argues the merits of her claims.

### 4. Supplements

In an Order filed February 6, 2024, the undersigned tentatively concluded that the state court's merits decision on Ground 5(B) (ineffectiveness at sentencing re mental illness) was contrary to Supreme Court law, and directed supplementation of the briefs and record to permit *de novo* consideration of Ground 5(B). On February 29, 2024, Respondents filed their Supplemental Answer (Doc. 44) arguing: (1) the state court's decision was not contrary to Supreme Court law; (2) and under *de novo* review the claim without merit. On March 13, 2024, Petitioner filed her Reply (Doc. 45) arguing the merits of her claim.

---

[6] Following an Order (Doc. 26), Respondents filed a Notice (Doc. 27) complying with Rule 5(c), Rules Governing § 2254 Cases.

### III.  APPLICATION OF LAW TO FACTS

**A.  EXHAUSTION AND PROCEDURAL DEFAULT**
**1.  Claims Not Properly Exhausted**

Respondents argue that Petitioner's claims of ineffective assistance in Grounds 4, 5A, 6A, 6B, 7A, 7B, 8A, 8B, and 9 are procedurally defaulted and thus are barred from federal habeas review.

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.   28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981).  Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).  With regard to the proper forum, because Petitioner was sentenced to a period of years, her claims "are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Petitioner presented a claim of ineffective assistance of counsel to the Arizona Court of Appeals only as part of her Petition for Review in her PCR proceeding.  However that claim was only as to trial counsel's ineffectiveness at sentencing regarding Petitioner's mental health.  (*See* Exh. R, PFReview.)    That is the claim in Ground 5B, to which Respondents do not assert a procedural default defense.

However, presentation of the ineffectiveness claim in Ground 5B did not result in fair presentation of Petitioner's other claims of ineffectiveness.   Ineffective assistance claims are not fungible, but must each be specifically argued. *See Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982) (presentation of "additional facts of attorney

incompetence" transformed claim into one not presented to state court); and *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (rejecting argument that presentation of any claim of ineffectiveness results in fair presentation of all claims of ineffective assistance).

Moreover, asserting a related substantive claim is not fair presentation of a claim of ineffective assistance. "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005). Thus, it is not sufficient that Petitioner may have argued some of the facts or legal arguments underlying a claim of ineffectiveness in the course of asserting another claim. The facts and legal arguments must have been specifically asserted as part of claim of ineffective assistance of counsel.

Accordingly, Petitioner failed to properly exhaust her state remedies on the following claims of ineffective assistance of counsel:

- Ground 4 (IAC re officer opinions);

- Ground 5A (IAC at trial re mental health);

- Ground 6A (IAC at trial re victim's injuries);

- Ground 6B (IAC at sentencing re victim's injuries);

- Ground 7A (IAC on appeal re fundamental error review);

- Ground 7B (IAC on appeal re mental health at sentencing);

- Ground 8A (IAC at trial re Rule 11 evaluation and records);

- Ground 8B (IAC on appeal re Rule 11 evaluation and records); and

- Ground 9 (IAC on PCR Petition for Review).

## 2. Procedural Default

Where a petitioner has failed to properly exhaust her available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice of a procedurally defaulted habeas claim

1   is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed*

2   *v. Ross*, 468 U.S. 1, 11 (1984).

3        Respondents argue that Petitioner may no longer present her unexhausted claims to

4   the state courts.  Respondents rely upon Arizona's waiver bar, set out in Ariz. R. Crim.

5   Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 22 at

6   12-13.)[7]

7        Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days

8   after entry of the judgment and sentence. Moreover, no provision is made for a successive

9   direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's

10  unexhausted claims.

11       No provision is made for a successive petition for review in Petitioner's first PCR

12  proceeding.    And, under Arizona's waiver and timeliness bars, Petitioner can no longer

13  seek review by a subsequent PCR Petition.

14       <u>Waiver Bar</u> - Under the rules applicable to Arizona's post-conviction process, a

15  claim may not ordinarily be brought in a petition for post-conviction relief that has been "

16  waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P.

17  32.2(a)(3).  Under this rule, some claims may be deemed waived if the State simply shows

18  "that the defendant did not raise the error at trial, on appeal, or in a previous collateral

19  proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting

20  Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069

21  (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior

22  PCR proceedings did not amount to waiver of claims of ineffective assistance of trial

23  counsel).

24       For others of "sufficient constitutional magnitude," the State "must show that the

25  defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground

26

27       [7] Petitioner makes no argument that Rules 32.2(a) and 32.4(a) are not independent and

28  adequate state grounds sufficient to bar federal habeas review of claims.

- 10 -

or denial of a right." *Id*. That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App. Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071. Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's unexhausted claims of ineffective assistance have at their core the kinds of claims identified as requiring a personal waiver, and therefore are procedurally barred as waived.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising her claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days of the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2(a)(3) and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(b) through (h), and are presented within a reasonable time after discovering the basis of the claim. *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a)(3) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appear that such exceptions would apply.

Paragraph 32.1(b) (subject matter jurisdiction) does not apply to Petitioner's procedural claims. Paragraph (c) does not apply because Petitioner raises no assertion that

her sentence exceeded what was authorized by law. Paragraph (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted to the state courts the facts underlying her claims. Paragraph (f) has no application because Petitioner filed a timely direct appeal. Paragraph (g) has no application because Petitioner has not asserted a change in the law since her last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Moreover, Petitioner has long known about her waived claims and proffers no reason any attempt to raise them now would not be deemed outside the deadline of a "reasonable time" after discovery. Accordingly, Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

## 3. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). Cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner offers no cause to excuse her procedural defaults.

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). Here, Petitioner asserts claims of **ineffective assistance of appellate counsel** in Ground 7 and 8(b). However, "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003). "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner has not fairly presented claims of appellate counsel ineffectiveness to the Arizona Court of Appeals. Accordingly, she cannot now rely upon them as cause to excuse her procedural defaults.

Moreover, Arizona has precluded the assertion of such claims on direct appeal. "[A] defendant may bring ineffective assistance of counsel claims only in a Rule 32 post-conviction proceeding—not before trial, at trial, or on direct review." *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, 153 P.3d 1040, 1044 (2007). Accordingly, appellate counsel could not have been deficient for failing to raise Petitioner's procedurally defaulted claims which are all based on ineffective assistance of counsel.

Petitioner also asserts in Ground 9 a claim of **ineffective assistance of PCR counsel** in her petition for review proceedings. However, the Supreme Court has recognized only two situations where ineffective assistance of PCR counsel can establish "cause." Neither apply. In *Maples v. Thomas*, 565 U.S. 266 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent but had abandoned the representation without notice to the petitioner. Petitioner has not alleged or shown she was abandoned by PCR counsel. In *Martinez v. Ryan,* 566 U.S. 1 (2012), the Court concluded that ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel. However, the *Martinez* court made clear that this did not extend to PCR ineffectiveness outside the initial PCR proceeding.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 566 U.S. at 16.  Petitioner's claim in Ground 9 is based on PCR counsel's failure on petition for review, not in the initial PCR proceeding in the PCR court.

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse her procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 4.  Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Moreover, not just any evidence of innocence will do; the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324.

1    Petitioner argues in Ground 2 there was insufficient evidence.  But a finding of

2    procedural "actual innocence" is not to be based upon a finding that insufficient evidence

3    to support the charge was presented at trial, but rather upon affirmative evidence of

4    innocence.  *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC

5    insurance in a bank robbery case, without evidence that insurance did not exist, not

6    sufficient to establish actual innocence).  "It is important to note in this regard that 'actual

7    innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United*

8    *States*, 523 U.S. 614, 623 (1998).

9    Liberally construed, Petitioner asserts in her Supplemental Reply that she is

10    actually innocent ("fundamental miscarriage of justice").  (Doc. 45 at 5.)  Petitioner refers

11    to the mental health evidence underlying her claim in Ground 5B.  However, Petitioner

12    fails to show such evidence would establish her actual innocence.  Arizona law requires

13    that a mental disease or defect be "of such severity that the person did not know the

14    criminal act was wrong."  Ariz. Rev. Stat. § 13-502(A).   Petitioner fails to explain how

15    the mental health evidence proffered in support of Ground 5B shows mental illness of that

16    severity.  At most, it concludes that subsequent to the instant offenses, Petitioner suffered

17    from paranoid delusions and "Bipolar disorder; most recent episode mixed, severe with

18    psychosis," (Exh. V, Supp. Exh., Discharge Summary at 1, 2),  or alternatively "a bipolar

19    disorder with psychotic features" or "schizoaffective disorder, bipolar type," (Exh. O, PCR

20    Pet. at Exh. 1, Rule 11 Eval. at 11-12).   Petitioner offers no evidence that her condition

21    was at least this severe at the time of the instant offenses, that the delusions were directed

22    at the victim, or that they precluded her from knowing assaulting the victim was wrong.

23    Accordingly, Petitioner's procedurally defaulted claims must be dismissed with

24    prejudice.

25

26    **B.  STANDARDS OF REVIEW**

27    While the purpose of a federal habeas proceeding is to search for violations of

28    federal law, in the context of a prisoner "in custody pursuant to the judgment of a State

court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Deferential Review of Merits Decisions** – Where the state court has rejected a claim on the merits, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  Rather, in such cases, 28 U.S.C. § 2254(d) provides restrictions on the habeas court's ability to grant habeas relief based on legal or factual error. This statute "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

**Errors of Law** – To justify habeas relief based on legal error, a state court's merits-based decision must be "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).  A state court decision is "**contrary to**" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*,  538 U.S. 63, 73 (2003) (internal quotation marks omitted).   To show an **unreasonable application**, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

**Errors of Fact** –  Similarly, the habeas courts may grant habeas relief based on factual error only if a state-court merits decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**De Novo Review** – Where there is no state-court merits-based decision, *Johnson v.*

*Williams*, 133 S.Ct. 1088, 1091-92 (2013), or the standards of § 2254(d) have been met, the habeas court reviews the state judgment *de novo*.

But even where the habeas court is reviewing a claim *de novo*, there is a well-established **presumption of correctness** of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## C.  GROUND 1 (INSTRUCTIONAL ERROR)
### 1.  Parties Arguments

In Ground 1, Petitioner alleges the trial court erred by failing to instruct the jury on justification defenses based on the victim being a trespasser and assaulting Petitioner, citing: (a) Ariz. Rev. Stat. § 13-411; and (b) Ariz. Rev. Stat. § 13-419.  Petitioner's claim in Ground 1 arises under two separate legal theories: (a) that the instructions given prevented Petitioner from presenting a complete defense in violation of her Due Process Right; and (b) that the instructions were erroneous because they failed to apply the applicable state law, resulting in a denial of due process.  (Petition, Doc. 21 at "6.")

Respondents argue these claim(s) were properly rejected by the Arizona Court of Appeals on direct appeal, and that the state court's rejection survives deferential review under 28 U.S.C. § 2254.  (Answer, Doc. 22 at 34-39.)

Petitioner replies arguing the merits of her claim.[8]  (Reply, Doc. 37 at 11-22.)

---

[8] In her Reply, Petitioner seems to add an argument regarding additional instructional error.  (*See e.g.* Reply, Doc. 37 at 25 (*mens rea*).)  Such claims were not raised in the Petition. "The district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

**2.  Applicable Federal Law**

**Complete Defense** - The Ninth Circuit has long held that, under Supreme Court law applicable in an AEDPA case, a defendant has a separate constitutional right, as part of his right to present a complete defense, to instructions on any applicable defenses.[9]  *See Bradley v. Duncan*, 315 F.3d 1091, 1098–99 (9th Cir. 2002); *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006).  As part of this right, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Bradley*, 315 F.3d at 1098 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

Notably, the complete defense standard does not require the reviewing court to determine the actual effect on the jury, but to instead simply ascertain whether a reasonable juror could have found the defense established.

However, on habeas review, a harmless error requirement applies to most errors. *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).  More particularly, that *Brecht* standard applies to claims based on denial of a complete defense.  *Crane v. Kentucky*, 476 U.S. 683, 691 (1986).  Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Frye* , 551 U.S. at 116 (quoting *Brecht*, *supra*, at 631).

> Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a "reasonable possibility" that the error was harmful.

*Davis v. Ayala*, 576 U.S. 257, 267–68 (2015) (cleaned up).

---

[9] The holding that the Supreme Court has established such law has been criticized as unfounded.  *See Saa v. Sherman*, 2020 WL 6092521, at *10 (C.D. Cal. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 6082133 (C.D. Cal. Oct. 15, 2020). However, as noted by Magistrate Judge Standish in *Saa*, this Court is bound by the Ninth Circuit's conclusion until overturned.  *Id.  See also Marquez v. Gentry*, 708 F. App'x 924, 926 (9th Cir. 2018) (Graber, C.J. dissenting) (recognizing *Bradley*, and criticizing majority for failing to follow it until overturned); and *Cebrero v. Ndoh*, 853 Fed. Appx. 159 (9th Cir 2021) (applying *Bradley* in AEDPA case).

**Instructional Error** - The Ninth Circuit has recently summarized the law regarding habeas review of general instructional error claims in a § 2254 state habeas:

> A court reviewing a claim of jury instructional error on federal habeas review first considers whether the erroneous instruction amounted to a constitutional error. *Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001). A constitutional error is established where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). If a federal habeas court finds constitutional error in the jury instructions, the court must then determine whether the erroneous instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted); *see also Morris*, 273 F.3d at 833.

*Reno v. Davis*, 46 F.4th 821, 841 (9th Cir. 2022).  The *Reno* court went on to address an assertion that the state court had misapplied state law in determining the appropriate instructions:

> As for Reno's second argument, "that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006); *see also Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The California Supreme Court's interpretation of California's 1977 death penalty statute binds us on federal habeas review. [*Bradshaw v.]Richey*, 546 U.S. [74] 76, 126 S.Ct. 602 [(2005) (*per curiam*)]; *see also Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) ("[S]tate courts are presumed to know and correctly apply state law.").

*Reno*, 46 F.4th at 841.


### 3.  State Court Decision

The Arizona Court of Appeals issued the last reasoned decision on this claim in Petitioner's direct appeal.  The Court made the following findings of fact:

> ¶16    At trial, defendant and C.C. provided widely differing versions of the incident and, aside from their testimony, the only other evidence presented at trial corroborated C.C.'s account. Defendant claimed both self-defense and defense of premises, and the court provided the correlating instructions. *See* A.R.S. §§ 13-404 (2019) (use of physical force in defense of oneself), -407 (2019) (use of force to terminate criminal trespass of a residential structure). As to each defense, the jury was told the State must prove beyond a reasonable doubt that defendant was not justified in her actions.

- 19 -

(Exh. L, Mem. Dec. 3/14/19 at ¶ 16.)  In addition, the Court had summarized Petitioner's version of events (albeit in a light favorable to the verdict) as:

> Defendant later testified that C.C. came into her home uninvited and attacked her. She claimed that she used the baseball bat to defend herself and also testified that C.C. rummaged through her drawers and briefly removed a knife from the silverware drawer. Defendant acknowledged, however, that she did not call police officers or provide them with her complete version of the incident.

(*Id.* at ¶ 7.)

The Court reasoned:

> ¶14    Defendant argues the superior court fundamentally erred in failing to sua sponte instruct the jury on (1) the use of force in preventing others from committing enumerated crimes under A.R.S. § 13–411 (2019); (2) the lack of duty to retreat afforded by A.R.S. § 13-405(B) (2019) and A.R.S. § 13-411(B); and (3) the presumption of reasonableness afforded by A.R.S. § 13–419 (2019).

> ¶15    Because defendant did not request the instructions at trial, we limit our review to fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) (clarifying fundamental error review). To establish fundamental error, a defendant bears the burden of proving fundamental error occurred and such error caused her prejudice. *Id.* at 142, ¶ 21. We consider jury instructions in their entirety in determining whether they are supported by the evidence and accurately reflect the law. *State v. Rodriguez*, 192 Ariz. 58, 61-62, ¶ 16 (1998). The superior court does not err in failing to provide an instruction that "does not fit the facts of the particular case, or is adequately covered by the other instructions." *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997).

> * * *

> ¶17    Given the facts and circumstances of the case, the court's failure to provide the additional instructions did not amount to fundamental, prejudicial error. *See State v. Gendron*, 168 Ariz. 153, 155 (1991) (no fundamental error in failing to give self-defense instruction based on totality of the circumstances).

(Exh. L, Mem. Dec. 3/14/19 at ¶¶ 14-17.)  Thus the state court rejected Petitioner's claim regarding instructional error based on the following conclusions:

- Because the instructions were not requested at trial, the appellate court was limited to fundamental error review.

- That the trial court provided the jury instructions (under Ariz. Rev. Stat. §§ 13-404 and 13-407) that were appropriate based on Petitioner allegations of self-defense and defense of premises.

1     -   The other instructions sought by Petitioner related to crime prevention, lack of

2          duty to retreat, and a presumption of reasonableness of force (under Ariz. Rev.

3          Stat. §§ 13-411, 13-405, and 13-419) did not fit the facts of the particular case

4          or were adequately covered by the instructions given.

5        However, the state court did not explicitly address Petitioner's claim that the failure

6  to give the instructions denied her federal Due Process right to present a complete defense.

7  Nonetheless, "[w]hen a state court rejects a federal claim without expressly addressing

8  that claim, a federal habeas court must presume that the federal claim was adjudicated on

9  the merits—but that presumption can in some limited circumstances be rebutted."

10  *Johnson v. Williams*, 568 U.S. 289, 301(2013).  Petitioner posits, and the undersigned

11  discerns, no reason to conclude that this claim was not rejected on the merits.

12        Where there is no reasoned rejection of the claim, it is impossible to ascertain

13  whether the state court identified the correct law, or whether they applied it reasonably.

14  This Court is left to applying its own evaluation, comparing the outcome to that of the

15  state court, and only then if there is a discrepancy can this court begin to evaluate whether

16  the state court outcome was "contrary to, or involved an unreasonable application of"

17  Supreme Court law.  *See Himes v. Thompson*, 336 F.3d 848, 853 and n.3 (9th Cir. 2003)

18  ("Independent review of the record is not de novo review of the constitutional issue, but

19  rather, the only method by which we can determine whether a silent state court decision is

20  objectively unreasonable").

21

22  **4.  Application of Law**

23        Because this claim was rejected on the merits, deferential review applies under 28

24  U.S.C. § 2254(d).  Petitioner points to no errors in the state court's decision which are

25  remediable under § 2254(d), and in her Reply largely just copies portions of her briefs in

26  her direct appeal.  These arguments do not identify any unreasonable determination of the

27  facts in the state court's decision, nor do they explain how the state court's decision was

28  contrary to or an unreasonable application of Supreme Court law.  To the extent that

Petitioner would argue that the state court misread the state statutes, Petitioner asserts an error in of state law, a matter on which the decision of the state court binds this Court. *Reno*, 46 F.4th at 841.  However, here the state court offered no explicit rulings on state law.  At best, the state court offered a conclusion that other statutes did not apply or were adequately covered by the instructions given.  Respondents' Answer similarly offers no analysis.  Accordingly, the undersigned addresses the application of the other state laws referenced by Petitioner.

Even on de novo review, Petitioner's claim is without merit, both under the instructional error standard, and the complete defense standard.

The trial court instructed based on two Arizona justifications, under Ariz. Rev. Stat. §§ 13-404 (self-defense) and 13-407 (defense of premises).   The former, **§ 13-404**, provides:

> A person is justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force.

Ariz. Rev. Stat. § 13-404(A).  The latter, **§ 13-407** provides:

> A person…is justified in threatening to use deadly physical force or in threatening or using physical force against another when and to the extent that a reasonable person would believe it immediately necessary to prevent or terminate the commission or attempted commission of a criminal trespass by the other person in or upon the premises.

Ariz. Rev. Stat. § 13-407(A).

Petitioner argues instruction should have been given under three other justification statutes: Ariz. Rev. Stat. §§ 13-405, 13-411, and 13-419.

**Deadly Force in Self Defense** - The first, **§ 13-405** extends the justification in 13-404 (self-defense) to include the use of deadly force only when reasonably believed "necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." Ariz. Rev. Stat. § 13-405(a)(2).  The trial court instructed the jury on the substance of this defense.  Petitioner argues the instruction under this statute should have included an instruction that retreat was not required.   Indeed, this statute explicitly

eliminates any requirement for retreat "if the person is in a place where the person may legally be and is not engaged in an unlawful act." Ariz. Rev. Stat. § 13-405(B). Here, however, Petitioner's jury was not instructed that retreat was required. The only two requirements given to Petitioner's jury to find this defense applicable were:

> THE COURT: . . .
>     1. A reasonable person in the situation would have believed that physical force was immediately necessary to protect against another's use of apparent attempted or threatened use of unlawful physical force; and
>     2. The defendant used or threatened no more physical force than what appeared necessary to a reasonable person in the situation. A defendant may use deadly physical force in self-defense only to protect against another's use or apparent attempted or threatened use of deadly physical force.

(Exh. C, RT Day Two at 134.) *Cf. State v. Palomarez*, 134 Ariz. 486, 489, 657 P.2d 899, 902 (Ct. App. 1982) (no error from failure to explicitly instruct on *absence* of duty to retreat under §§ 14-404 and 13-405). Petitioner points to, and the undersigned has found, no place where a duty of retreat was otherwise presented or argued to the jury.

The jury having had no reason to require Petitioner to retreat to rely on self-defense, any failure to instruct under § 13-405(B) was harmless error under Petitioner's "complete defense" claim. Similarly, it had no substantial and injurious effect or influence in determining the jury's verdict," and Petitioner has failed to establish her instructional error claim.

**Force in Crime Prevention** - The second, **§ 13-411**, justifies the use of physical force and deadly physical force to prevent the commission of various specified offenses:

> arson of an occupied structure under § 13-1704, **burglary** in the second or first degree under § 13-1507 or 13-1508, kidnapping under § 13-1304, manslaughter under § 13-1103, second or first degree murder under § 13-1104 or 13-1105, sexual conduct with a minor under § 13-1405, sexual assault under § 13-1406, child molestation under § 13-1410, armed robbery under § 13-1904 or **aggravated assault** under § 13-1204, subsection A, paragraphs 1 and 2.

Ariz. Rev. Stat. § 13-411(A) (emphasis added).

Petitioner argues in her Reply that under § 13-411 (unlike the instructions given) no belief in danger to the defendant is necessary for this justification to apply. (Reply,

Doc. 37 at 27.) But Petitioner's theory on the application of this statute is that the victim was committing aggravated assault under Ariz. Rev. Stat. § 13-1204 and burglary to commit aggravated assault and/or theft under Ariz. Rev. Stat. § 13-1507 or 13-1508.

The qualifying **aggravated assault** offenses required serious physical injury or use of a deadly weapon or dangerous instrument. Ariz. Rev. Stat. § 13-1204(a)(1) and (2). For this to apply, the jury would have had to believe Petitioner's version of events (i.e. that the victim assaulted her by pulling out a knife from a kitchen drawer, and hit Petitioner in the head with a broom, breaking the broom). (*See* Exh. C, RT Day Two, at 96-98.) But Petitioner offers no reason why, if the jury had believed that version of events, it would not have found the regular self-defense justifications under Ariz. Rev. Stat. § 13-404 and 13-405 (on which the jury was instruction) applied, and thus have acquitted Petitioner even without this instruction.

Similarly, the qualifying **burglary** to commit theft or another felony (as proscribed in Ariz. Rev. Stat. § 13-1507) required a to "enter or remain[ ] unlawfully" with the intent to commit a theft or other felony. Under Petitioner's version of the facts presented at trial, the victim arguably remained "unlawfully" when Petitioner told her to leave, and arguably had the intent to commit theft when she went looking for Petitioner's money and/or the intent to commit an aggravated assault when she attacked Petitioner with a broom handle.

> Q. Okay. And so when she came in through that doorway and you made contact, you said she was going -- after you told her you don't have the money, you said she was going through the cabinets and drawers. So –
>
> A. This is the kitchen drawers. Kitchen drawers here, cupboards all along the top. Here is the kitchen drawers. This is where she began. And she had a knife in her hand out of this -- my silverware drawer. And just had it in her hand for a while. And was just -- she pulled things out of my cupboards. She broke my tile. My tile countertop here. And threw things out of the cupboard. And just rummaging around, and went over and walked -- should I keep going?
>
> Q. Keep going.
>
> A. And walked over -- proceeded to come to this area -- there's a pantry here. So she grabbed me by my hair right around this area She was upset. She was very mad. I mean, pretty much just fearing for my life, you know, at some point here. Because she punched me a couple times over here in my head and drug me around the countertop.

* * *

I mean, she -- she dropped -- she let go of me over here, from this area around the countertop. And I thought maybe she'd leave, but -- you know, she's still yelling. She said -- she grabbed a broom. And this all happened so quickly. She grabbed the broom. She hit me on the head with the broom and said, "I'm not leaving without my money."

(Exh. C, RT Day Two at 96-98.)

But the jury rejected Petitioner's assertions that the victim had entered or remained unlawfully on her premises with an intent to commit a theft or other felony and when they rejected Petitioner's defense of premises arguments.  The trial court instructed:

A defendant in lawful possession or control of the premises is justified in using physical force in defense of premises if a reasonable person in the situation would have believed it immediately necessary to prevent or terminate the commission or attempted commission of criminal trespass by another person in or upon the premises. The force used may not be greater than reasonably necessary to prevent the attempted criminal trespass.

An actual criminal trespass is not necessary to justify the use of physical force in defense of premises. A defendant is justified in the defending premises if the defendant reasonably believed that a criminal trespass was being committed or attempted. You must measure the defendant's belief against what a reasonable person in the situation would believe. The defense ends when the criminal trespass ends.

* * *

"Criminal trespass" means that a person either:

1. Knowingly entered or remained unlawfully on any real property after a reasonable request to leave by the owner or reasonable notice prohibiting entry; or

2. Knowingly entered or remained unlawfully in a residential structure or a fenced residential yard.

"Enter or remain unlawfully" means an act of a person who enters or remains on premises when such person's intent for entering or remaining is not licensed, authorized or otherwise privileged."

(Exh. C, RT Day Two at 133, 138-139.)   Under these instructions, the intent to commit a theft or an aggravated assault necessary to the crime prevention defense would have qualified as a criminal trespass. Thus, by finding no criminal trespass the jury necessarily rejected Petitioner's assertions that the victim was attempting to commit a theft and/or aggravated assault.

Petitioner argues an instruction under this statute would have informed the jury she had no duty to retreat.  Indeed, the statute specifies there is no duty to retreat, Ariz. Rev. Stat. § 13-411(B).  But as with § 13-405, the absence of such an excluding instruction was

harmless in the absence of instruction or argument to the contrary.

Petitioner also argues an instruction under § 13-411 would have required the jury to employ a presumption of reasonableness of the force used.  Indeed, this statute imposes a presumption of reasonableness of the force used.   Ariz. Rev. Stat. § 13-411(C).  However, the presumption afforded in § 13-411(B) is of little import given Arizona's assignment of the burden of proof on its self-defense and related defenses.

> Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence. Justification defenses under chapter 4 of this title are not affirmative defenses. Justification defenses describe conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct. If evidence of justification pursuant to chapter 4 of this title1 is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification.

Ariz. Rev. Stat. § 13-205(A).  Indeed, Petitioner's jury was instructed:

> If evidence was presented that raises the defense of premises, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with just justification. If the State fails to carry this burden, you must then find the defendant not guilty of that charge.

(Exh. C, RT Day Two, at 133-134.)

> If evidence was presented that raises the defense of self-defense, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of that charge.

(*Id.* at 135.)

Moreover, in adopting § 13-205 to shift the burden of proof on justification defenses from the prosecution to the defense, the legislature specifically exempted the presumption in § 13-411(B).  Ariz. Rev. Stat. § 13-205(B) ("This section does not affect the presumption contained in § 13-411, subsection C").  This kept the reasonableness of Petitioner's use of force under § 13-411 from being a matter on which the state bore the ultimate burden of proof, to a matter which became Petitioner's burden of proof once the state offered any evidence to rebut the presumption. *State v. Martinez*, 202 Ariz. 507, 511, 47 P.3d 1145, 1149 (Ct. App. 2002) ("The state had only to present contradictory evidence,

which it did. At that point, the burden shifted and the defense had the burden of proving justification-crime prevention by a preponderance of the evidence.")

In essence, by not instructing on §13-411, the trial court kept the entire burden of proof on Petitioner's justification defenses on the prosecution. This made it easier, rather than harder, for Petitioner to establish a justification defense based on the victim's presence on her property and purported assault.

Based upon the foregoing, any failure to instruct on § 13-411 was harmless error under Petitioner's "complete defense" claim. Similarly, it had no substantial and injurious effect or influence in determining the jury's verdict," and Petitioner has failed to establish her instructional error claim.

**Presumption on Necessity in Residence** - The third statute on which Petitioner relies, **§ 13-419**, creates a presumption of reasonableness of belief of necessity of force if the other person "is unlawfully or forcefully entering or has unlawfully or forcefully entered and is present in the person's residential structure or occupied vehicle." Ariz. Rev. Stat. § 13-419(A).

As with the presumption in § 13-411, however, the failure to give this presumption instruction was harmless, given that the instructions given to the jury placed the burden of proof of the absence of the defense on the prosecution.   Similarly, it had no substantial and injurious effect or influence in determining the jury's verdict," and Petitioner has failed to establish her instructional error claim.

**Conclusion** – Based on the foregoing, Ground 1 is without merit and must be denied.

## D.  GROUND 2 (INSUFFICIENT EVIDENCE)
### 1.  Parties' Arguments

In Ground Two, Petitioner alleges there was **insufficient evidence** to support the jury's verdict on aggravated assault because: (1) the officer's opinion that the victim's arm injury was cause by blunt force was inadmissible; (2) the victim never testified that her

arm injuries were caused by a bat; and (3) the victim's medical treatment was delayed 30 hours and there was no medical evidence linking the victim's injuries to Petitioner's actions, and there were other potential causes such as improper self-treatment before seeking medical care, or cessation of medical care thereafter.  (Petition, Doc. 21 at "7.")

Respondents argue the state court's rejection of this claim survives deferential review because there was sufficient evidence that Petitioner caused the victim's injuries, and the officer's testimony was admissible based on his observations and training. (Answer, Doc. 22 at 39-42.)

Petitioner replies by arguing the merits of her claim with regard to the officer's opinions.  (Reply, Doc. 37 at 29-32.)

**2.  Applicable Federal Law**

Petitioner's claim includes both assertions of violations of state evidentiary law (with respect to admission of the officer's testimony), and overall insufficiency of the evidence.

**Admissibility of Evidence** - "It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977–78 (9th Cir. 1999).  "In addition to error, a habeas petitioner must establish actual prejudice, meaning a substantial and injurious effect on the verdict."  *Demetrulias v. Davis*, 14 F.4th 898, 907 (9th Cir. 2021).

**Insufficiency of the Evidence** - "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989) (citation omitted).  In evaluating a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 319 (1979).

### 3.  State Court Decision

The Arizona Court of Appeals rejected this claim on direct appeal, and found and reasoned:

> ¶10    Defendant argues her convictions for aggravated assault are not supported by sufficient evidence. She further contends the officer's testimony regarding C.C.'s injuries cannot be used to support her convictions.
>
> ¶11    In reviewing the sufficiency of the evidence, we resolve all conflicts in the evidence against a defendant. *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987).
>
> ¶12 In relevant part, a person commits aggravated assault by committing assault, as defined in A.R.S. § 13–1203 (2019), and either uses a dangerous instrument or causes temporary but substantial disfigurement. A.R.S. § 13–1204(A)(2), (3). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13–105(12) (2019). Whether a temporary disfigurement is substantial is a fact-intensive inquiry, "taking into account multiple factors—such as the injury's seriousness, location, duration, and visibility to others." *State v. Pena*, 235 Ariz. 277, 280, ¶ 11 (2014).
>
> ¶13    Through testimony and photographic evidence, the state showed that defendant swung a baseball bat at C.C., hit her on the arm, and caused severe injury. This was sufficient to prove both counts of aggravated assault. *See* A.R.S. §§ 13–105(12), -1203(A)(1), -1204(A)(1), (3). Contrary to defendant's claim, we need not discount the officer's testimony regarding C.C.'s injuries in reaching this conclusion. First, defendant did not object to the testimony below and has not argued fundamental error on appeal. Therefore, she has waived this argument on appeal. *See State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶ 17 (App. 2008). Second, the officer need not be qualified as an expert to provide the challenged testimony because it was not based on scientific, technical, or specialized knowledge, and was simply "rationally based" on the officer's observations of C.C.'s injuries. *See* Ariz. R. Evid. 701; *State v. Peltz*, 241 Ariz. 792, 798, ¶ 18 (App. 2017). On this record, we find sufficient evidence to support the convictions.

(Exh. L, Mem. Dec. 3/14/19 at ¶¶ 10-13.)

Thus, the state court rejected Petitioner's evidentiary claim by finding that the officer's testimony was not opinion testimony, and rejected the insufficiency claim by

viewing the evidence in the light most favorable to the prosecution and concluding that each element of the offense was proven.

**4.  Application of Law**

    **Evidentiary Error** – The state court relied on Arizona Rule of Evidence 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>     (a) rationally based on the witness's perception;
>     (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>     (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Here, the officer testified:

>     Q. And through your training and experience, would you recognize a bump like that to be consistent with someone who has experienced blunt force trauma?
>     A. Yes.

(Exh. B, RT Day One, at 57.)

    The undersigned assumes, *arguendo*, that the officer's self-asserted reliance on his "training and experience" meant this testimony was based on "specialized knowledge," taking this testimony outside of Rule 701, and making it admissible only under Arizona Rule of Evidence 702, governing expert opinions.  *But see State v. Lara,* No. 1 CA-CR 18-0384, 2019 WL 2394144, at *2 (Ariz. Ct. App. June 6, 2019) (unpublished) (similarly finding opinion by officer that source of injury was from fist "based on their training and experience" qualified as lay opinion).

    However, as discussed hereinafter, there was ample other evidence of record to establish that Petitioner hit the victim's arm with a bat (a "blunt force"), and that the requisite level of injury resulted (which need not have been "trauma," just temporary disfigurement).  Thus Petitioner fails to show that this the Officer's testimony had "a substantial and injurious effect on the verdict."  *Demetrulias*, 14 F.4th at 907.

    **Sufficiency of the Evidence** – Petitioner makes no argument that the state court's decision was contrary to or an unreasonable application of Supreme Court law.  Albeit

citing to state authorities, the state court identified the applicable standard established by *Jackson*, 443 U.S. at 319.    At most, Petitioner argues that the state court made an unreasonable determination of the facts by relying on the officer's testimony and ignoring other evidence regarding the victim's injuries.

Respondents suggest that a claim of insufficiency of the evidence is subject to review only under § 2254(d)(1) (contrary to or unreasonable application of the law), and not under § 2254(d)(2) (unreasonable determination of the facts).[10]  In any event, Petitioner does not assert any such erroneous factual determinations, but only attacks the state court's application of the *Jackson* standard, *i.e.* the determination that the evidence found was sufficient.  Petitioner fails to show such error.

Under Arizona law, the prosecution was required to show an assault, and to show use of a dangerous weapon or temporary but substantial disfigurement.

---

[10] Indeed, the Ninth Circuit has explained the trouble in applying § 2254(d)(2) to "*Jackson* claims."

> By contrast, § 2254(d)(2) is not readily applicable to *Jackson* cases. Under § 2254(d)(2), the federal court must decide whether the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Emphasis added.) Section 2254(d)(2) does not describe the task of a court in performing a *Jackson* analysis. A court under *Jackson* makes no "determination of the facts" in the ordinary sense of resolving factual disputes. Rather, the court views the evidence in the light most favorable to the prosecution without resolving any disputed factual questions. Our task under AEDPA in reviewing a state court's holding applying *Jackson* is not to decide whether that court unreasonably determined disputed facts. It is, rather, to decide whether the state court unreasonably applied the *Jackson* test of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Sarausad v. Porter*, 479 F.3d 671, 677–78 (9th Cir. 2007), *rev'd and remanded on other grounds sub nom. Waddington v. Sarausad*, 555 U.S. 179 (2009).The undersigned does not understand this as removing all review under § 2254(d)(2). For example, *Sarausad* cannot be read to preclude the habeas court from determining whether the state court was unreasonable in determining the evidence which was before the jury.  Although not common, such disputes do occur, particularly with respect to evidence not commonly reflected within the four corners of the court reporter's transcript.  A particularly recurrent issue is the contents of audio recordings, especially surveillance tapes, or as in this case, 911 calls (*see* Exh. C, RT Day Two at 168) that regularly produce garbled language purportedly subject to differing interpretations of what words were spoken. Such a determination would be subject to the standards in § 2254(d)(2).

There was ample **evidence of assault**, even without the Officer's assertion of "blunt force trauma." Petitioner testified to having the bat and did not deny hitting the victim with it.

> I mean, she -- she dropped -- she let go of me over here, from this area around the countertop. And I thought maybe she'd leave, but -- you know, she's still yelling. She said -- she grabbed a broom. And this all happened so quickly. She grabbed the broom. She hit me on the head with the broom and said, "I'm not leaving without my money."
>
> And so at this time I came over here. I did have a bat by my back door here. And I wasn't trying to hurt anybody. I just -- you know, I just wanted her to leave. And I -- I wasn't trying to hurt anybody. I just wanted her out of my house. I told her, "You need to leave." She told me again, "I'm not leaving without my money."

(Exh. C, RT Day Two at 98-99.) Indeed, even in closing arguments Petitioner did not assert a denial, instead arguing only justification. (*See* Exh C, RT Day Two, at 150 ("We're not here saying this didn't happen. We're not trying to convince you that, no, she did not strike [the victim] with the bat. That is not the story we're telling you today.").

Petitioner complains there was no testimony by the victim to being hit by the bat. When initially testifying, the victim arguably seemed to deny being struck:

> Well, that's not what happened. Because before she even got to the kitchen, she had sicked her dog on me, and he was biting me. And I was yelling at her to get her dog. And she came around the corner with a baseball bat.
>
> But while I was busy defending myself from a dog, Gina was taking a swing at my head. And I got my hand up. People don't believe in guardian angels, they should, because that's why I'm here right now.
>
> Q. So she took a swing --
> A. Yeah, she took a swing at my head.
> Q. Okay.
> A. Wasn't my arm. It was my head.
> Q. Okay. And -- and that struck your arm?
> A. No, it didn't strike my arm. I put my arm up to save my head.
> Q. Okay.
> A. I put my arm up to block it, is what I did.

(*Id.* at 24-25.) But a reasonable juror could infer that the witness was asserting that Petitioner was trying to hit her head, not her arm, and that her arm was struck only because she raised it to avoid being hit in the head. Indeed, the later victim testified to trying to avoid "being struck again" (*id.* at 43), agreed that the Petitioner "just came out swinging

and hit [her] with a bat," (*id.* at 42), testified she would have continued waiting if Petitioner "hadn't hit [her] with a bat on that day (*id.* at 48) and testified she "was asked to leave after I was bit and struck by a bat" (*id.* at 117).

The prosecution was also required to prove that Petitioner either used a **dangerous instrument or caused temporary but substantial disfigurement**.  (*See* Exh. C, RT Day Two at 131 (elements of aggravated assault).)  Petitioner proffers nothing to show that a reasonable juror could not conclude that her bat qualified as a dangerous instrument, *i.e.* that it was "readily capable of causing death or serious physical injury." A.R.S. § 13–105(12).

Although use of a dangerous instrument was sufficient for a conviction, Petitioner also fails to show that there was not sufficient evidence of a "temporary but substantial disfigurement."  At most, Petitioner argues that the victim allowed her injuries to become exacerbated by delays in or rejection of treatment.   That does not, of itself, do anything to show that the immediate state of the injury was not substantial disfigurement.   As instructed by the trial court, "'disfigurement' means to blemish or spoilt the appearance or shape of." (Exh. C, RT Day Two at 131.)  The jury had before it a photograph (Exh. D, at Exhibit 11 (Photo 1), and Exhibit 12 (Photo 2)) taken the same afternoon as the altercation, showing the "lump" on the victim's arm.  (Exh C, RT Day Two at 54-57.)

Further, the state appellate court summarized the impacts of the injuries:

> ¶5    The next morning, C.C. woke to discover she lost blood flow to her right hand and went to the emergency room. C.C. suffered a severe injury to her right arm and doctors nearly amputated her hand. C.C. underwent a total of three surgeries and has "over a hundred staples holding [her] arm together." Photographs were taken of her injuries.

(Exh. L, Mem. Dec. 3/14/19 at ¶ 5.)  Moreover, Petitioner offers nothing to show that the victim's approach to treatment was so unreasonable, abnormal or extraordinary as to cutoff Petitioner's assault from being the proximate cause of the injury.  *See State v. Dodd*, 244 Ariz. 182, 185, 418 P.3d 955, 958 (Ct. App. 2017) (discussing requisite "but for" and proximate causation under Arizona criminal law).

1
2
3
4
5
6
7
8
9

Petitioner also complains that there was no medical evidence establishing the condition resulting in surgeries was caused by being hit with the bat, suggesting it might have come from a bee sting. (Reply, Doc. 37 at 31.) But there was nothing in the record to suggest another possible cause. The prosecution need not disprove every possible exonerating explanation for events. Rather, it need only prove the elements of the offense beyond a reasonable doubt, which is one "based on reason which arises from the evidence or lack of evidence." *Johnson v. Louisiana*, 406 U.S. 356, 360 (1972), *abrogated on other grounds by Ramos v. Louisiana*, 590 U.S. - - , 140 S. Ct. 1390 (2020). Here Petitioner points to no evidence, only speculation, about such other causes.

10
11
12
13

**Conclusion** – Petitioner's evidentiary error and insufficient evidence claims are without merit. Even if this Court could find some merit, Petitioner fails to show that the decision of the state court to the contrary is remediable under § 2254(d). Accordingly, Ground Two must be denied.

14

15
16

**E. GROUND 3 (PROSECUTORIAL MISCONDUCT)**
**1. Parties Arguments**

17
18
19
20
21
22

In Ground Three, Petitioner alleges the prosecutor engaged in misconduct during closing argument by telling the jury it could draw no inference from Petitioner's husband's absence at trial and unconstitutionally shifted the burden of proof from the State to Petitioner. (Petition, Doc. 21 at "8".) Respondents argue the state court's rejection of this claim survives review under § 2254(d).[11] (Answer, Doc. 22 at 43-44.) Petitioner replies arguing the merits of the claim. (Reply, Doc. 37 at 33-41.)

23
24

/ /
/ /

25
26
27
28

[11] Respondents argue on the basis of the instruction to the jury that the attorneys' arguments were not evidence. (Answer, Doc. 37 at 44.) But here the issue was not a question of evidence, but whether the jury had the legal right to make an adverse inference from the absence of a witness. Respondents point to no instruction by the court on this issue that would obviate any error in the prosecutor's purported erroneous assertion of the law.

- 34 -

## 2. State Court Decision

**Factual Findings** – The Arizona Court of Appeals rejected this claim on direct appeal, finding:

> ¶20    In closing argument, defense counsel argued that the jury could consider the fact that the prosecutor failed to call C.C.'s husband in its deliberations. In rebuttal, the prosecutor argued defense counsel asked them to consider facts not in evidence, contrary to the law provided in their instructions. Defense counsel objected to the prosecutor "commenting on opposing counsel," but the objection was overruled.
>
> ¶21 … The prosecutor simply responded to defense counsel's argument, reiterated the law provided in the jury instructions, and asked the jury not to make any inferences based on evidence not presented at trial.

(Exh. L, Mem. Dec. 3/14/19 at ¶ 20.)

**Reasoning** - The state court reasoned:

> ¶19    To secure reversal for prosecutorial misconduct, a defendant must show the prosecutor's actions were improper and "a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) (internal quotation omitted). Counsel is provided "wide latitude in presenting their closing arguments to the jury." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000).
>
> * * *
>
> ¶21    Here, the prosecutor's comments were not misleading or improper. The prosecutor simply responded to defense counsel's argument, reiterated the law provided in the jury instructions, and asked the jury not to make any inferences based on evidence not presented at trial. *See State v. Alvarez*, 145 Ariz. 370, 373 (1985) (holding prosecutor's comments were proper rebuttal to areas opened by defense counsel). Moreover, the superior court instructed the jury that statements made in closing argument were not evidence. Without any indication otherwise, we presume the jury followed these instructions. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). As such, there is no reasonable likelihood the prosecutor's argument impacted the jury's verdict.

(*Id.* at ¶¶ 19, 21.)   Thus, the state court concluded both that there was no misconduct, and that no prejudice to Petitioner resulted.

## 3. Federal Law

In order to demonstrate prosecutorial misconduct, the petitioner first must show the prosecutor's closing comments were improper.  If they were, the court considers whether

the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); Davis v. Kemp, 829 F.2d at 1526. In fashioning closing arguments, prosecutors are allowed reasonably wide latitude. *United States v. McChristian*, 47 F.3d 1499, 1507 (9th Cir. 1995).

### 4. Application of Law

**No Unreasonable Determination of the Facts** - Petitioner offers nothing to show the state court made an unreasonable determination of the facts in ¶ 20 of its opinion.

In closing arguments, defense counsel argued the jury should consider that the prosecution did not call the victim's husband, an eyewitness to at least a portion of the incident:

> MR. BEST: … And so I want you to consider a few things. We talked about credibility of witnesses. And Mr. Yamaguchi brought that up. He said, "Whose story are you going to believe more at the end of the day? Ms. Dumont has a reason to lie in this case." And that is a valid consideration, and you should consider that when weighing the testimony that you had today. But I want to start off with not what was heard today but what wasn't heard today. Right now the State's saying we have two eyewitnesses. We have Ms. Dumont and [the victim]. Was that all we had, though? [The victim's] husband was there. Why wasn't he on the stand today testifying about what he saw? And you get to use your common sense, just as Mr. Yamaguchi stated. You get to think about that. What does that mean that he wasn't here today? What does that mean?
> 
> I would have liked the opportunity to have heard what he had to say, what he observed. He may not have seen the things start to finish, but he definitely got involved at some point where he got in between the two women and prevented the attack from going any further, allegedly. So I want you to consider not only what you heard but what you didn't hear.

(Exh. C, RT Day Two at 159-160.)

On rebuttal, the prosecution countered:

> MR. YAMAGUCHI: … The first page of those instructions you've been given are important. The second line says, "It is your duty to follow these instructions."
> 
> Mr. Best wants you to think about things you didn't hear today. He wants you to think about what [the victim's] husband would have said. Your -- your duty is to follow these instructions, and the

instructions read, you must determine the facts only from the evidence produced in court. "Evidence" means the testimony of witnesses and the exhibits introduced in court. You should not guess about any fact.
   And that is what Mr. Best is asking you to do. Mr. Best also wants to talk about –
   MR. BEST: Objection, Your Honor. He's commenting on co-counsel -- or opposing counsel.
   THE COURT: This is argument. Objection is overruled.

(*Id.* at 165-166.)

  Whether ¶ 21 was a correct determination of the facts is less clear.  A reasonable jurist could conclude that the prosecution was not "simply respond[ing] to defense counsel's argument, reiterat[ing] the law provided in the jury instructions, and ask[ing] the jury not to make any inferences based on evidence not presented at trial."  Rather, a reasonable jurist could conclude that the prosecution was arguing to the jury that it could make no inference from the failure of the victim's husband to testify.

  Nonetheless, the undersigned cannot conclude that no reasonable jurist could concur in the state court's characterization of the prosecution's argument.

  **<u>Not Contrary to Supreme Court Law</u>** - Petitioner points to no meaningful distinction between the *Darden* standard and the one applied by the state court.  Nor has Petitioner pointed to an indistinguishable Supreme Cour case reaching a different conclusion.  Accordingly, Petitioner has not shown the state court decision was contrary to Supreme Court law.

  Petitioner has also not shown that the state court made an unreasonable application of Supreme Court law.

  With regard to the impropriety of the prosecution's conduct, even if this Court could find the state court's factual evaluation unreasonable, the prosecutor's comments would not have been improper.  Ordinarily an adverse inference can only be drawn from a witness's failure to testify when the party against whom the inference is to be drawn is a natural and reasonable one.  That generally applies only where the impacted party was uniquely positioned to have called the witness.  *See United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982); *State v. Maloney*, 105 Ariz. 348, 354, 464 P.2d 793, 799 (1970).

"Wigmore states that where a witness is equally available to both sides or when he is not available to either side, no inference should be allowed by either party from the other's failure to call that witness to testify. *State v. Condry*, 114 Ariz. 499, 500, 562 P.2d 379, 380 (1977) (citing Wigmore on Evidence, 3rd Ed., §§ 286, 288).

Here, Petitioner offers nothing to show that the victim's husband was unavailable to the defense. Moreover, Petitioner offers nothing to show that the victim's husband was a competent witness to the relevant facts. For example, the victim testified that her husband was outside the home at the time she was being bitten by Petitioner's dog and hit by Petitioner' bat. (Exh. C, RT Day Two at 25-26, 43, 117.)

With regard to the resulting unfairness, even if this Court could find the prosecutor's conduct improper, Petitioner fails to show the trial was so unfair as to amount to a violation of due process. Contrary to the suggestion by defense counsel, the victim's husband was not a tie-breaking witness that would resolve the factual dispute between the victim and Petitioner's version of the key events because the victim's husband was outside the home.

**Conclusion** – Under the deference due under 28 U.S.C. § 2254(d), Petitioner's claim in Ground 3 is without merit.

## F. GROUND 5(B) (INEFFECTIVENESS RE MENTAL HEALTH)
### 1. Parties Arguments

In Ground 5(B), Petitioner argues trial counsel was ineffective in failing to question petitioner about, investigate, or argue Petitioner's mental illness on sentencing. (Petition, Doc. 21 at 6.) Respondents initially argued that (under a "doubly deferential" standard of review applicable to ineffective assistance claims rejected by the state courts on the merits) this claim must be rejected because the state court found no prejudice because it "concluded" it would have imposed the same sentence, which was not an unreasonable "finding." (Answer, Doc. 22 at 44-47.) Petitioner's reply was limited to copies of her brief on the claim in the state court. (Reply, Doc. 37 at 45-48.)

In an Order filed February 6, 2024, the undersigned tentatively concluded that the state court's merits decision on Ground 5(B) (ineffectiveness at sentencing re mental illness) was contrary to Supreme Court law, and directed supplementation of the briefs and record to permit *de novo* consideration of Ground 5(B).

Respondents' Supplemental Answer (Doc. 44) argues the decision was not contrary to Supreme Court law and under *de novo* review the claim is without merit because: (1) counsel was not deficient because evidence of mental illness was in the record and counsel argued it at sentencing; and (2) Petitioner fails to show prejudice had counsel done more.

Petitioner's Supplemental Reply (Doc. 45) argues the merits of her claim.

## 2.  State Court Decision

This claim was raised by Petitioner in her PCR proceeding and argued in her Petition for Review to the Arizona Court of Appeals.  The latter court granted review, but rejected this claim, making the following relevant findings of fact and engaging in the following analysis:

> ¶8 At the sentencing, Dumont maintained her innocence. Her counsel told the court that Dumont suffers from mental-health issues— post-traumatic stress disorder ("PTSD")—and asked it to find that the mitigation outweighed the case's aggravation.
>
> ¶9 The court stated that it had read and considered the presentence report's information and its two supplements, including Dumont's written statement. The first supplement to the presentence report stated, "[Dumont] reports no history of emotional or mental treatments but advises, 'I have been diagnosed with acute PTSD BY THE Social Security doctor.'" The court, relying on the jury's verdict, rejected Dumont's self-defense claim. The court found as mitigation that Dumont had no prior felony convictions. Regarding Dumont's mental health, the court stated,
>> The Court cannot find as a mitigating circumstance the defendant's mental health issues. I have no doubt the defendant suffers from some mental health issues, but nothing has been presented to me that mental health issues did contribute to her assault on the victim. Again, the defendant is not denying she assaulted the victim. The defendant's position is I was legally justified in doing so to protect myself, and so there's really been no evidence or no connection between any mental illness she may suffer and the assault from the victim in this case. That's the only mitigating circumstance the court can find.

The trial court sentenced Dumont to an aggregate term of 8.5 years' imprisonment.

\* \* \*

¶14 "A defendant is entitled to an evidentiary hearing when he presents a colorable claim, that is a claim which, if defendant's allegations are true, might have changed the outcome." *State v. Watton*, 164 Ariz. 323, 328 (1990). "If . . . the court determines that no remaining claim presents a material issue of fact or law that would entitle the defendant to relief under this rule, the court must summarily dismiss the petition." Ariz. R. Crim. P. 32.11(a). Put another way, a defendant is entitled to an evidentiary hearing only if the petition for post-conviction relief presents a colorable claim— one that, "if true, would probably have changed the verdict or sentence." *State v. Kolmann*, 239 Ariz. 157, 160, ¶ 8 (2016) (emphasis omitted) (quoting *State v. Am*aral, 239 Ariz. 217, 220, ¶ 11 (2016)). "To state a colorable claim of ineffective assistance of counsel, a defendant must show both that counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced the defendant." *State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish prejudice under Strickland, the defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 568, ¶ 25 (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim." *Id*. at 567, ¶ 21.

¶15    In its order dismissing Dumont's petition for post-conviction relief, the court explained that although Dumont's counsel had raised Dumont's PTSD at sentencing, it had concluded that "any mental health issues were insufficient to mitigate" Dumont's sentence given the circumstances of the offense and aggravating circumstances. Moreover, even after reviewing Dr. Schiff's evaluation and other records related to Dumont's mental health and considering the evidence as a mitigating circumstance, the court specifically found it would still have imposed the same aggravated 8.5-year term of imprisonment for Dumont's most serious offense. Because the result of Dumont's sentences would remain the same, the court concluded she had not established a colorable claim of ineffective assistance of counsel.

¶16    We see no basis to disturb the superior court's conclusion. The sentencing court alone determines the weight to be given evidence offered in mitigation. *State v. Cazares*, 205 Ariz. 425, 427, ¶ 8 (App. 2003); *see also State v. Pena*, 209 Ariz. 503, 509, ¶ 22 (App. 2005) (describing sentencing judge "weighing and balancing aggravating and mitigating factors" to determine sentence within statutory range). As the sentencing judge in Dumont's trial, the court was uniquely positioned to evaluate whether a reasonable probability existed that the additional information Dumont claimed her trial counsel should have presented would have changed her sentence. *See* Ariz. R. Crim. P. 32.10(a) ("The presiding judge must, if possible, assign a proceeding for post-conviction relief to the sentencing judge."); *Mann v. Ryan*, 828 F.3d 1143, 1157 (9th Cir. 2016) (deferring to

Arizona state post-conviction court's conclusion that failure to raise mitigation evidence would not have changed the sentence imposed, in part, because the judge "was the same judge who had handed down Mann's initial sentence, giving him particular insight into how the additional evidence would, or would not, have changed Mann's mitigation profile").

¶17    In *State v. Morales*, 170 Ariz. 360, 365 (App. 1991), for example, this court addressed a petition for review alleging trial counsel had provided ineffective assistance by failing to present detailed mitigation evidence concerning the defendant's post-traumatic stress disorder. Because the defendant's mental-health issues were touched upon in the presentence report and the superior court found "its sentences would have been the same even if the evidence had been presented earlier," we deferred to the superior court and found no error. *Id.*

¶18 Here, Dumont's trial counsel raised Dumont's mental-health issues to the court at sentencing. The evidence presented in her post-conviction relief petition merely added more detail on her symptomology and diagnoses. After considering the additional information provided by Dr. Schiff's evaluation and other records, the court expressly concluded it would have imposed the same sentence.

¶19 As in *Morales*, this "assessment is not something we can overturn on review." 170 Ariz. at 365; *Mann*, 828 F.3d at 1157–58; *see also, e.g., State v. Arzaga*, 2 CA-CR 2020-0029-PR, 2020 WL 4370950, at *2, ¶ 4, *4, ¶ 13 (Ariz. App. July 30, 2020) (mem. decision) (court of appeals affirmed no colorable claim after the superior court concluded that the sentence would "be the same" even if the defendant was correct that the statutory aggravating factor found by the jury was inapplicable when applied to the current offense); *State v. Álvarez*, 1 CA-CR 15-0363 PRPC, 2017 WL 2180359, at *1, ¶ 2 (Ariz. App. May 18, 2017) (mem. decision) (no colorable claim concerning trial counsel's failure to interview codefendant when the superior court concluded that "the information in the codefendant's affidavit would have had no effect on the court's decision to impose a seven-year sentence even if known by the court prior to sentencing").

¶20 Accordingly, Dumont has failed to establish that she suffered prejudice because her trial counsel failed to request a mental-health evaluation or present more detailed mental-health-mitigation evidence at sentencing. The court did not abuse its discretion by summarily dismissing the claim.

(Exh. S, Mem. Dec. 4/8/21 at ¶¶ 8-9, 14-20.)

## 3.  Applicable Federal Law

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim,

Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

To establish **deficient performance**, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *D.* at 690.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Consequently, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To establish **prejudice**, a petitioner "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," *id.* at 693, but "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In the context of ineffectiveness at sentencing, the petitioner "must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter v. McCollum*, 558 U.S. 30, 41 (2009).

"The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency…Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices,

should not be considered in the prejudice determination." *Strickland*, 466 U.S. at 695.

### 4.  No Double Deference

Because this claim was rejected on the merits, it is subject to deferential review under § 2254(d).  However, Respondents argue for application of a "doubly deferential" standard of this claim, citing *inter alia Knowles v. Mirzayance*, 556 U.S. 111 (2009) where the Court applied a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Id.* at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)).  But that "doubly deferential" standard arises from the application of deference under § 2254(d) to the deferential standard applicable to determining whether counsel's performance was deficient.  *Yarborough*, 540 U.S. at 6. No similar deference applies to the prejudice prong. *See Hardy v. Chappell*, 849 F.3d 803, 825 (9th Cir. 2016) ("Because only the prejudice prong is at issue here, double deference does not apply."); *Cannedy v. Adams*, 706 F.3d 1148, 1161 (9th Cir.), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013) ("Review of the deficient performance prong under § 2254(d)(1) is therefore 'doubly' deferential."); and *Apelt v. Ryan*, 906 F.3d 834, 841 n. 7 (9th Cir. 2018) (Paej, CJ, joined by W. Fletcher and Berzon, CJs, dissenting from the denial of en banc rehearing) ("the Supreme Court's 'doubly deferential' language emerged exclusively in the context of assessing counsel's *performance*" (emphasis in original)); and *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1334 (11th Cir. 2013) (Jordan, CJ, concurring) ("We give deference on habeas to a state court's ruling on prejudice under § 2254(d), but that is the only deference involved.").  *But see Waiters v. Lee*, 857 F.3d 466, 477 n. 20 (2d Cir. 2017) (noting circuit split and detailing cases).

Here the state court's decision was based solely on the prejudice prong. Thus, the only deference applied to the prejudice prong is deference under § 2254(d), and the "doubly deferential" standard does not apply.

//

//

**5.  Contrary to Supreme Court Law**

Petitioner does not address the § 2254(d) standard.

Here, the Arizona Court of Appeals failed to apply an objective standard to determining prejudice, as required by *Strickland*, and instead gave deference to the prejudice determination of the PCR judge because he was the sentencing judge.

> ¶ 16   …As the sentencing judge in Dumont's trial, the court was uniquely positioned to evaluate whether a reasonable probability existed that the additional information Dumont claimed her trial counsel should have presented would have changed her sentence. …this "assessment is not something we can overturn on review."

(Exh. S, Mem. Dec. 4/8/21 at ¶¶ 16-17, 19 (emphasis added).)

By deeming the PCR court's prejudice determination "uniquely positioned" to determine that the deficient performance "would [not] have changed [the victim's] sentence" (because the PCR judge was also the sentencing judge) **and** by concluding that it could not review that determination, the state court failed to apply the objective standard to the determination of prejudice, as required by *Strickland*.  To the contrary, the state court effectively applied a standard that turned solely upon the idiosyncrasies of the particular judge, *i.e.* that the judge who originally sentenced Petitioner would have not altered his sentence.[12]

> The PCR court's prejudice determination was contrary to Strickland [because] the court determined whether it would have imposed a death penalty if it had considered the mitigation evidence that McVay failed to present. However, the test for prejudice is an objective one. *See Strickland*, 466 U.S. at 695, 104 S.Ct. 2052 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker...."). It considers the likelihood of a different result not just by the trial court but by an appellate court that "independently reweighs the evidence." *Id*.

---

[12] The undersigned is cognizant that the judge addressing post-conviction claims of ineffective assistance at sentencing are regularly addressing their own sentences. Presumably, however, they are still capable of applying the appropriate objective standard of a reasonable probability of a different outcome without consideration of their own predispositions or idiosyncrasies.  Judges are routinely called upon to exercise such disengaged analysis.  But the innate difficulty of such task illustrates the danger of reviewing courts accepting those determinations as immune from review.

- 44 -

*White v. Ryan*, 895 F.3d 641, 670–71 (9th Cir. 2018).

> The State argues that we must accord special deference to the PCR court's holding that Kayer suffered no prejudice because the judge who presided over the PCR proceedings was also the original sentencing judge. The State is incorrect. We assess prejudice independent of the particular judge or judges, as made clear by the Supreme Court in *Strickland*:
>
>> The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.
>
> 466 U.S. at 695, 104 S.Ct. 2052. A post-conviction court must assess whether there is a reasonable possibility that
>
>> the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of the aggravating and mitigating factors did not warrant death.
>
> *Id.*
> "[T]he test for prejudice is an objective one." *White v. Ryan*, 895 F.3d 641, 670 (9th Cir. 2018). In *White*, we faulted the prejudice determination by the PCR court because that "court determined whether it would have imposed a death penalty if it had considered the mitigation evidence that [defendant] failed to present [at the penalty phase]." *Id.* (emphasis in original). We further faulted it for failing to take into account the fact that the Arizona Supreme Court was required to independently weigh the aggravating and mitigating circumstances.

*Kayer v. Ryan*, 923 F.3d 692, 719–20 (9th Cir. 2019), *vacated on other grounds sub nom. Shinn v. Kayer*, 592 U.S. 111 (2020).  *See also United States v. Johal*, 853 F.3d. Appx. 110, 114 (9th Cir. Apr. 16, 2021) (unpublished) (quoting *Kayer*).

In their Supplemental Response, Respondents argue that all the state appellate court did was to give deference to the trial judge's finding that his weighing of the additional mitigation evidence would not have changed her sentencing decision.  Respondents argue that such a conclusion is "clearly relevant…because the PCR judge was uniquely positioned to determine what weight to give this additional information." (Doc. 44 at 3-4.) This argument flies in the face of the plain language of the appellate court's decision that did not merely consider the trial judge's conclusion, and did not merely "defer" to it, but held  it was "not something we can overturn on review."  That effectively creates an irrebuttable presumption that the PCR/sentencing judge's determination of prejudice is

1    correct.

2          Moreover, the subjective impact on the specific original sentencer is not an

3    appropriate or relevant "fact" for consideration. *Strickland* instructs that the prejudice

4    inquiry (like the deficient performance inquiry) is not a question of fact, and thus entitled

5    to deference of a reviewing court as a factual determination, *e.g.* under 28 U.S.C. §

6    2254(d), Federal Rule of Criminal Procedure 52(a), *etc*. Rather, it is a mixed question of

7    law and fact that a reviewing court must independently undertake. 466 U.S. at 698. *See*

8    *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980) (mixed question "requires the application of

9    legal principles to the historical facts of this case"); *Thompson v. Keohane*, 516 U.S. 99,

10   110 (1995) ("So-called mixed questions of fact and law, which require the application of

11   a legal standard to the historical-fact determinations… are not facts [entitled to deference.

12   Only] basic, primary, or historical facts are the factual issues to which the statutory

13   presumption of correctness dominantly relates.") (cleaned up).

14         Indeed, in *Strickland*, the Court concluded that testimony taken from the trial judge

15   was not only unnecessary to its decision, but "irrelevant to the prejudice inquiry." *Id.* at

16   700. In doing so, it referenced its earlier observation ("*supra,* at 2069") that in finding

17   prejudice from a deficient performance at sentencing that "the question is whether there is

18   a reasonable probability that, absent the errors, the sentencer—*including an appellate*

19   *court, to the extent it independently reweighs the evidence*—would have concluded that

20   the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at

21   695. This conclusion came on the heels of the Court's instruction that the prejudice inquiry

22   is not concerned with the expected subjective result from the particular decisionmaker, in

23   this case the sentencing (and post-conviction) judge, but the objective result from a

24   "decisionmaker [who] is reasonably, conscientiously, and impartially applying the

25   standards that govern the decision." *Id.* at 695.

26         The approach employed by the state court finds no controlling support in any post-

27   *Strickland* authority. The undersigned accepts *arguendo* that state precedent did indeed

28   mandate the appellate court accept as irreversible the PCR/sentencing judge's

1    determination that the sentencing decision would not have been altered.  However, the

2    state court's reliance on the Ninth Circuit's decision in *Mann v. Ryan* is misplaced.   In

3    *Mann*, the Ninth Circuit gave no deference to the PCR court's legal conclusion about

4    whether the outcome, *i.e.* the sentence, would have been altered, but only to the PCR

5    court's factual finding on the evaluation of "how the additional evidence would, or would

6    not, have changed Mann's mitigation profile."  *Mann v. Ryan*, 828 F.3d 1143, 1157 (9th

7    Cir. 2016).   A change in a mitigation profile is a factual determination, and not a

8    determination on the sentencing outcome.

9        In doing so, *Mann* relied on the Supreme Court's decision in *Schriro v. Landrigan*,

10   550 U.S. 465 (2007), where the Court found it worth noting "that the judge presiding on

11   postconviction review was ideally situated to make [an] assessment because she is the

12   same judge who sentenced Landrigan and discussed these issues with him."  *Id.* at 476.

13   As in *Mann*, however, the assessment gaining deference was not on the ultimate issue of

14   whether a different outcome would have occurred, but on a discrete factual issue whether

15   the defendant "informed his counsel not to present any mitigating evidence." *Id.*

16       Nothing in *Mann* or (more importantly) *Schriro* suggests that a reviewing court

17   (even if consisting solely of the sentencing judge) can abdicate the responsibility to make

18   an independent, *objective* determination of the likelihood of a different outcome.

19       Respondents' Supplemental Answer raises a series of unconvincing arguments why

20   the decision was not contrary to *Strickland*.

21       First, Respondents assert that the state court correctly identified the *Strickland*

22   deficient-performance-and-prejudice standard and cited to cases applying it.  (Supp. Ans.,

23   Doc. 44 at 2.)  The State court did indeed identify at least portions of the holdings of

24   *Strickland*.  But the state court failed to identify the particular portions of *Strickland* that

25   prevent a reviewing court from relying on the idiosyncrasies of the particular sentencing

26   judge, and require it to treat prejudice as a mixed question of law and fact.

27       Second, Respondents assert that the appellate court (despite its disavowal of an

28   ability to reject the PCR court's determination) undertook an independent review of the

prejudice issue.  (Supp. Ans., Doc. 44 at 2-3.)  This might be convincing if the state court had reached its own conclusion on prejudice, and then simply corroborated it by reference to the PCR/sentencing judge's conclusions.  But the state court did not.  Instead, the appellate court identified only three factual findings: (1) "Dumont's counsel had raised Dumont's PTSD at sentencing"; (2) the PCR/sentencing judge had "reviewed Dr. Schiff's evaluation and other records related to Dumont's mental health and considered the evidence as a mitigating circumstance" before reaching its decision; and (3) the PCR/sentencing judge concluded the claim was without merit because she would not have changed her sentence. (Exh. S, Mem. Dec. 4/8/21 at ¶ 15-16.)  The latter is, of course, "irrelevant."  *Strickland*, 466 U.S. at 700.  The first, standing alone, fails to meaningfully evaluate the purported prejudice because it addresses only what was done by counsel, not what wasn't done. The second was a legal determination, not a factual finding, and did not resolve the prejudice issue.  Thus, the state appellate court never undertook the task assigned in *Strickland* of deciding, without considering the subjective effect on the original sentencer, whether there was a reasonable probability Petitioner would have received a different sentence.[13]  *Id.* at 694-695.

Finally, Respondents argue that the state court only did what the courts had done in *Morales* and *Alvarez*, *i.e.* it gave "specific deference to the PCR court's assessment that its weighing of the additional mitigation evidence would not have changed the court's ultimate sentence when determining whether Dumont had established, under the *Strickland* standard, a reasonable probability that, but for counsel's unprofessional errors, the sentence would have been different."  (Supp. Ans., Doc. 44 at 3.)   Indeed, in *State v.*

---

[13] What is particularly troubling is that the standard applied by the appellate court could effectively insulate Arizona sentences from review on the basis of ineffective assistance of counsel at sentencing.  As noted by the state appellate court in this case, Arizona directs PCR proceedings (the only forum in which ineffective assistance claims can be raised in Arizona) be assigned to the sentencing judge. *See* Ariz. R. Crim. P. 32.10(a).  Under the standard applied in this case, the PCR judge would appear to have no obligation to evaluate the prejudice objectively, instead simply asking herself if she thought her own mind would have been changed, and the appellate court would, in turn, have no ability to question whatever determination the PCR judge made.

*Morales*, 170 Ariz. 360, 365, 824 P.2d 756, 761 (Ct. App. 1991) the court opined without authority or analysis: "The trial court ruled that its sentences would have been the same even if the evidence had been presented earlier. That assessment is not something we can overturn on review." *State v. Morales*, 170 Ariz. 360, 365, 824 P.2d 756, 761 (Ct. App. 1991). Thus *Morales* was similarly contrary to *Strickland*. In contrast, in *State v. Alvarez*, No. 1 CA-CR 15-0363 PRPC, 2017 WL 2180359, at *1 (Ariz. Ct. App. May 18, 2017), the court did not explicitly apply any irrebuttable presumption or deference to the lower court in its two paragraph memorandum decision, But, assuming Respondents and the Arizona Court of Appeals in this case (which read *Alvarez* as treating the lower court's decision as controlling) are correctly reading *Alvarez*, then *Alvarez* was similarly contrary to *Strickland*.

In sum, the state appellate court's decision was contrary to the holdings of *Strickland* that the prejudice prong is "a mixed question of law and fact,", not to be determined upon "the idiosyncracies of the particular decisionmaker." 466 U.S. at 698.

## 6.  De Novo Determination

Because the state court's decision was contrary to *Strickland*, this Court must review the claim *de novo*, without deference under 28 U.S.C. § 2254(d) to the state court's reasoning, conclusions or resolution of mixed questions of fact and law. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014); and *Frantz v. Hazey*, 533 F.3d 724, 739 (9th Cir. 2008) (finding "contrary to" error).

### a.  Governing Sentencing Law

In Arizona, a sentencing judge must generally select a sentence among the range of a mitigated, minimum, presumptive, maximum, and aggravated sentences. *See* Ariz. Rev. Stat. § 13-702. To do so, the trier of fact must make findings regarding aggravating and mitigating circumstances, and the court must sentence to an aggravated or mitigated term accordingly. Ariz. Rev. Stat. § 13-701(C). If both aggravating and mitigating

circumstances are found, the court must determine "whether the amount of mitigating circumstances is sufficiently substantial to justify the lesser term." Ariz. Rev. Stat. § 13-701(F).   The statutes specify various aggravating factors, Ariz. Rev. Stat. § 13-701(D), and mitigating factors, § 13-701(E), but both include: "Any other factor…relevant to the defendant's character or background or to the nature or circumstances of the crime." Ariz. Rev. Stat. § 13-701(D)(27) and (E)(6).

Under Arizona law, mental illness is relevant at sentencing.

> E.   For the purposes of determining the sentence…the court shall consider the following mitigating circumstances:
> * * *
> 2. The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.
> * * *
> 6. Any other factor that is relevant to the defendant's character or background or to the nature or circumstances of the crime and that the court finds to be mitigating.

Ariz. Rev. Stat. § 13-701(E).[14]

### b.   Factual Determinations

Despite reviewing the claim *de novo*, this Court is still constrained by the state courts' finding of fact, in two respects: (1) those findings of fact are subject to a presumption of correctness which can only be overcome by "clear and convincing

---

[14] Arizona had long held that evidence of mental illness could be admitted as a mitigating factor only if there was a "causal nexus" between the illness and the crime. *See McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (reviewing history).  In *Tennard v. Dretke*, 542 U.S. 274 (2004) the U.S. Supreme Court held that in a capital-sentence case a state court may not preclude mitigation evidence from mental illness based on the lack of a causal nexus between the mental illness and the crime.   However, Arizona has concluded that *Tennard* addressed only admissibility and not the weight of mitigation evidence, and that the lack of a causal connection is an appropriate consideration for giving little weight to the evidence.   *State v. Roseberry*, 237 Ariz. 507, 509, 353 P.3d 847, 849 (2015).   This approach has been found to not violate *Tennard*. *See Sansing v. Ryan*, 41 F.4th 1039, 1062 (9th Cir. 2022), *cert. denied sub nom. Sansing v. Thornell*, 143 S. Ct. 984 (2023). However, the state court may not give *no* weight to the mitigating factor based on a lack of causal connection. *Poyson v. Ryan*, 879 F.3d 875, 889 (9th Cir. 2018).  This case, of course, was not a capital sentencing case.   Accordingly, the individualized sentencing requirement for capital sentences which underlay *Tennard* has no application. *See United States v. Gomez*, 472 F.3d 671, 674 (9th Cir. 2006).

evidence," 28 U.S.C. § 2254(e)(1); and (2) Petitioner cannot present new evidence (to show the incorrectness of the state court's findings, or otherwise) if she failed to develop the factual basis in the state courts, unless she meets certain stringent requirements, 28 U.S.C. § 2254(e)(2).   Here, Petitioner proffers no new evidence not previously before the state courts, and points to no incorrect findings of fact by the state courts. Accordingly, the undersigned adopts the following relevant findings of historical or basic fact by the Arizona Court of Appeals:

1. At the sentencing, Petitioner maintained her innocence.  (Exh. S, Mem. Dec. at ¶ 8.)

2. Counsel argued at sentencing that Petitioner suffers from mental-health issues—post-traumatic stress disorder ("PTSD")—and asked it to find that the mitigation outweighed the case's aggravation.  (*Id.* at ¶¶ 8, 18.)

3. The court stated that it had read and considered the presentence report's information and its two supplements, including Petitioner's written statement. (*Id.* at ¶ 9.)

4. The first supplement to the presentence report stated, "[Dumont] reports no history of emotional or mental treatments but advises, 'I have been diagnosed with acute PTSD BY THE Social Security doctor.'"  (*Id.*)

5. The court, relying on the jury's verdict, rejected Dumont's self-defense claim. (*Id.*)

6. The court found as mitigation that Dumont had no prior felony convictions. (*Id.*)

7. Regarding Dumont's mental health, the PCR court stated,

> The Court cannot find as a mitigating circumstance the defendant's mental health issues. I have no doubt the defendant suffers from some mental health issues, but nothing has been presented to me that mental health issues did contribute to her assault on the victim. Again, the defendant is not denying she assaulted the victim. The defendant's position is I was legally justified in doing so to protect myself, and so there's really been no evidence or no connection between any mental illness she may suffer and the assault from the victim in this case. That's the only mitigating circumstance the court can find.

(*Id.*)

8. The trial court sentenced Dumont to an aggregate term of 8.5 years' imprisonment.

(*Id.*)[15]

9. The evidence presented in Petitioner's post-conviction relief petition added more detail on her symptomology and diagnoses. (*Id.* at ¶ 8.)

In addition to the foregoing, the undersigned finds that the evidence before the state court also established the following facts:

a. On November 11, 2016 (12 days after the assault), Petitioner was involuntarily admitted to Desert Parkway Behavioral Healthcare Hospital, with a diagnosis of "paranoid delusions, depressions and she is a danger to self." Symptoms included "depression, racing thoughts, paranoia about her neighbor harassing her and calling the police who shot her dog." (Exh. V, Supp. PCR Exh., Eval. 11/12/16.)   At discharge her diagnosis was: "Bipolar disorder; most recent episode mixed, severe with psychosis."  (*Id.* at Discharge Summary at 2.)

b. The Pre-Sentence Investigation Report contained no reference to Petitioner's

---

[15] The undersigned concludes that the following reflect only the PCR judge's subjective explanations for its PCR conclusion of no prejudice, and thus are not appropriate for consideration by this Court (or the state appellate court) in assessing prejudice.

> ¶15    In its order dismissing Dumont's petition for post-conviction relief, the court explained that although Dumont's counsel had raised Dumont's PTSD at sentencing, it had concluded that "any mental health issues were insufficient to mitigate" Dumont's sentence given the circumstances of the offense and aggravating circumstances. Moreover, even after reviewing Dr. Schiff's evaluation and other records related to Dumont's mental health and considering the evidence as a mitigating circumstance, the court specifically found it would still have imposed the same aggravated 8.5-year term of imprisonment for Dumont's most serious offense. Because the result of Dumont's sentences would remain the same, the court concluded she had not established a colorable claim of ineffective assistance of counsel.

(Exh. S, Mem. Dec. at ¶ 15.)

> After considering the additional information provided by Dr. Schiff's evaluation and other records, the court expressly concluded it would have imposed the same sentence.

(*Id.* at ¶ 18.)

1     mental health other than the single statement identified by the Arizona Court of

2     Appeals, and a reference to Petitioner's completion of out-patient treatment for

3     alcohol in Lanmar County, Colorado in 2002 and 2006.   (*See* Exh. S1-A,

4     Supplemental Pre-Sentence Report at 2 and 4.)

5     c.   The Pre-Sentence Investigation Report asserted Petitioner had a criminal history

6        that involved "eleven misdemeanor convictions four being violence related." (Exh.

7        S1-A, Supp. Present. Inv. Rep. at 4.)

8     d.   The Pre-Sentence Investigation Report attached a letter from Petitioner's sister,

9        Suzanne Dumont asserting "I also believe Gina suffers mentally – she is bi-polar

10       and should be on medication." (Exh. S1-A, Letter 11/27/17 (Doc. 44-1 at 19.)

11    e.   On July 2, 2018 (some six months after sentencing in this case) Petitioner was

12       subjected to a competency evaluation in separate criminal proceedings.   The

13       evaluation by Dr. Laurence Schiff, M.D., although finding Petitioner competent for

14       trial, opined that he:

15              suspected her mental state in her treated, current condition, is

16              significantly better than her mental state at the time of the multiple
                 interactions with the police and the multiple interactions with her

17              neighbor… I do believe that she was probably much more severely
                 mentally ill at the time of her various arrests and I suspect that her

18              current competence is due to the administration of psychotropic
                 medication…I do believe that Ms. Dumont suffers from mental

19              illness, likely a bipolar disorder with psychotic features, although a
                 schizoaffective disorder, bipolar type cannot be completely without,

20              although these are  largely similar illnesses that respond to the same
                 types of medications.

21       (Exh. O, PCR Pet. at Exh. 1, Rule 11 Eval. at 11-12.)

22    f.   The entirety of trial counsel's argument on mental health at sentencing consisted of

23       the following:

24              In the PSI, it also discusses some mental health issues, that she suffers
                 from PTSD, and that may have contributed to this case in some way.

25       (Exh. G, R.T. 12/27/17 at 5.)

26    g.   There is no evidence to indicate counsel conducted any inquiry into Plaintiff's

27       mental health beyond reading the presentence report.

28

h.  The trial court selected an aggravated sentence of 8.5 years on the aggravated assault in Count 1 (which was the longest of the concurrent sentences), based on the rejection of the mental health issue and:

    a.  the jury's finding of the aggravating factor that "the victim suffered physical, emotional or financial harm"  (Exh. G, R.T. 12/27/17 at 11, 15);

    b.  a mitigating factor that Petitioner "has no felony convictions" (*id.* at 14);

    c.  an aggravating factor, "the infliction or threatened infliction of serious physical injury" (*id.* at 15); and

    d.  a conclusion that "the aggravating circumstance controls."

i.  The trial court found the following to be the harm to the victim:

> Although I believe her arm was actually fractured, the State didn't present any evidence at trial that her arm was actually fractured. Although I believe it probably was, but clearly, she suffered at the very least temporary but substantial disfigurement because she had to have three surgeries. There are photographs that were presented at trial regarding the surgeries, regarding the scarring, regarding the stitches she had in her arm, and this was a pretty serious injury that the defendant inflicted on the victim. She also testified to the effects of the injury to her, that she lost her job over this. That she indicated was, quote, a hard road to recovery, so clearly she suffered, as the jury found, physical, emotional, and financial harm based on the assault caused by the defendant.

(Exh. G, R.T. 12/27/17 at 16-17.)

j.  Had counsel sought a mental health examination for sentencing (pursuant to Ariz. R. Crim. Proced. 26.5), the trial court would have appointed the same provider that conducted the Rule 11 examination on July 2, 2018, and the report would have been "substantially the same."[16]  (Exh. Q, Order 4/29/20 at 9, 12.)

**c.  Deficient Performance**

Petitioner asserts counsel performed deficiently by failing to: (1) question

---

[16] The PCR court identified the provider conducting the July 2, 2018 Rule 11 evaluation as "Dr. Harvancik," rather than Dr. Schiff.  But both the date and final diagnosis matched the report of Dr. Schiff.  (*Compare* Exh. Q, Order 4/29/20 at 9 *with* Exh. N, PCR Pet., Exh. 1.)

Petitioner on or otherwise investigate Petitioner's mental illness; (2) failing to adequately present the issue at sentencing.  (SAP, Doc. 21 at 11.

This Court must start with the "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 688.  Petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Respondents argue the Court cannot find deficient performance because: (1) counsel argued Petitioner's innocence and self-defense at sentencing; (2) counsel did argue mental illness; (3) mental illness was raised in the presentence report. (Supp. Ans., Doc. 44 at 4-5.)  Respondents do not address the assertion that trial counsel was ineffective for failing to investigate Petitioner's mental health to present a more robust (and accurate) picture of Petitioner's mental illness.

The undersigned concludes that trial counsel performed deficiently by failing to investigate Petitioner's mental health.  The record shows that counsel had reason to investigate.  At a minimum, Petitioner's purported PTSD diagnosis was reported to counsel in the presentence report. The bare references in the PSR did not render further action by counsel unnecessary.  Rather, they would have compelled counsel to develop an accurate picture of Petitioner's mental illness.  Moreover, Petitioner's demeanor in the trial court was sufficiently indicative of mental illness to cause the trial judge to observe at sentencing: "I have no doubt the defendant suffers from some mental health issues." Nothing in the record indicates that trial counsel had any other information from Petitioner or some other source about Petitioner's true mental illness history to render further investigation unnecessary.

Had counsel investigated, there is no reason to believe he would not have discovered the records from Petitioner's involuntary commitment and discovered that (contrary to the assertion in the PSR that Petitioner had never received mental health treatment) she had received treatment just weeks after the assault, and that rather than

1    simply having PTSD, Petitioner suffered from paranoid delusions, depression and a severe

2    bipolar disorder with psychosis.

3         Armed with such information, reasonable counsel would have sought a mental

4    health evaluation of Petitioner.  Respondents argue that Petitioner merely speculates that

5    if counsel had sought an evaluation, it would have resulted in the equivalent of the post-

6    sentencing evaluation by Dr. Schiff.  (Supp. Ans., Doc. 44 at 5, n. 3.)  But the PCR court

7    made factual findings that if counsel had requested an evaluation, the trial court would

8    have appointed the same psychiatrist, and the report would have been "substantially the

9    same."  (Exh. Q, Order 4/29/20 at 9, 12.)

10        Not only was counsel's investigation inadequate, his presentation at sentencing was

11   deficient.  Counsel's entire argument at sentencing was less than two pages of transcript.

12   (Exh. G, R.T. 12/27/17 at 5-6.)  Moreover, counsel did not argue innocence and self-

13   defense at sentencing as a basis for mitigation.  Rather, counsel argued that the trial judge

14   should not be influenced by Petitioner's lack of remorse which was a necessary result of

15   her continued assertion of innocence and self-defense.  (*Id.* at 5.)    There was nothing

16   incongruous with counsel's arguing Petitioner's mental health while pointing to her

17   insistence on self-defense; paranoia is not inconsistent with a belief (albeit one driven by

18   mental illness) in the need for self-defense. Moreover, the presentation of one argument

19   did not suffice for the other.

20        To the extent that counsel referred to the PSR's notation of mental illness, that was

21   not a reasonable argument of mental illness as a basis for mitigation.  Reasonable counsel

22   would have anticipated that the value of such evidence would depend upon a showing of

23   a causal nexus.  Thus, reasonable counsel would be expected to present to the trial court

24   reasons why Petitioner's mental illness should be considered relevant to her culpability.

25   *See Hamilton v. Ayers*, 583 F.3d 1100, 1119 (9th Cir. 2009) (counsel deficient for failing

26   to "explain the significance of the mitigating evidence").  Had counsel investigated, his

27   argument at closing could have argued the nexus between Petitioner's paranoia and her

28   rejected assertions of self-defense.

### d.   Prejudice

Respondents argue that Petitioner has failed to establish prejudice. Respondents recite the trial court's aggravation and mitigation findings and heavy weighting of the victim's injuries, and then turn to the PCR ruling to show that the mental health information would not have altered the judge's ruling.   (Supp. Ans., Doc. 44 at 5-7.)

As discussed above, the task of this court is not to identify what the specific judge at trial would have done, but what impact the omitted evidence or argument would have had on an objective, conscientious decision-maker.

Even if this Court could legitimately rely on the PCR court's determination (rather than its historical fact-finding), the PCR court's rationale is unfounded.  The PCR court reasoned that the lack of relevance flowed from the lack of a showing at trial and sentencing that the mental health issues "contributed to her conduct; at all times, including at Judgment and Sentence, the defendant believed her conduct was legally justified, as opposed as a result a mental health issue."   But the relevance of mental illness at sentencing is not limited to providing a legal justification or ground for a finding of innocence.  And the relevant issue was not what Petitioner's counsel actually presented at sentencing, but what reasonable counsel would have presented or argued.

Thus, the question remains whether the evidence a reasonable investigation would have produced, and the arguments reasonably made thereon, would establish that, objectively, a conscientious sentencing judge provided with such would have rendered a lesser sentence.  Here, Petitioner proffers nothing to show that is the case.

On the aggravation side, the jury found the aggravating factor that "the victim suffered physical, emotional or financial harm"  (Exh. G, R.T. 12/27/17 at 11, 15.)  The trial court found as an additional factor "the infliction or threatened infliction of serious physical injury" (*Id.* at 15.)   The trial court further found as a mitigating factor that Petitioner "has no felony convictions." (*Id.* at 14.)

For three reasons, the undersigned concludes that Petitioner has not shown a reasonable probability that additional evidence and/or argument on her mental illness

would have caused a sentencer to select a mitigated sentence.

First, Petitioner has proffered nothing to show a causal nexus or other relevant connection between her mental illness and the assault on the victim.  Nor has she proffered evidence to show such a connection.   For example, Petitioner offers no evidence of paranoia directed at the victim, or that she was experiencing delusions at the time of the assault.  Nor has she requested an evidentiary hearing to present it.  Rather, she has left this court to speculate that such might be the case.

Second, a significant number of criminal defendants exhibit some form of mental illness, and thus sentencing judges seldom accord significant weight to mental illness without a showing that the illness contributed to the crime, whether as a direct causal nexus or otherwise.  To do otherwise would effectively equate mental illness with criminal conduct.  Indeed, the Arizona courts routinely suggest that absent a causal nexus, mental illness should be afforded little weight.  *See e.g. State v. Prince*, 226 Ariz. 516, 542, 250 P.3d 1145, 1171 (2011) ("Absent a causal nexus to the crime, however, we usually give [mental illness] little weight."); *State v. Pandeli*, 215 Ariz. 514, 533, 161 P.3d 557, 576 (2007) ("We consider mental impairment mitigation in proportion 'to a defendant's ability to conform or appreciate the wrongfulness of his conduct.'"); *State v. Newell*, 212 Ariz. 389, 132 P.3d 833, 849 (2006) ("the failure to establish such a causal connection may be considered in assessing the quality and strength of the mitigation evidence").  Cf. *State v. Roque*, 213 Ariz. 193, 230, 141 P.3d 368, 405 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 386 P.3d 798 (2017) (giving substantial weight to mitigation where evidence showed causal relationship between mental illness and crime, and citing similar cases).

Third, the aggravating factors of the significant harm to the victim and the infliction of serious physical injury would remain highly weighted.  As found by the trial judge at sentencing, the victim "suffered physical, emotional, and financial harm," the "assault in this case was pretty severe...the defendant swung a baseball bat...aimed at her head...which could have caused perhaps death if she was struck in the head," the victim

"suffered at the very least temporary but substantial disfigurement because she had to have three surgeries" and had "scarring" and "lost her job over this," and had "a hard road to recovery, so clearly she suffered." (Exh. G, RT 12/27/17 at 15-17.) Petitioner asserts there was no evidence to support the aggravating factors, and denies she aimed at the victim's head, or that the victim had three surgeries or lost her job. (Supp. Reply, Doc. 45 at 2-3.) But Petitioner points to no evidence before the trial court to support her denials, aside from own self-serving denials, which were largely rejected by the jury. And the weight of evidence at trial supported the trial judge's findings. (*See* Exh. C, R.T. 10/31/17 at 25, 46 (swing at head); 31, 57 (injury to arm, initial surgery); 32 (three surgeries, loss of job); 34, 65-66 (recovery), 36 (additional treatment).)

Thus Petitioner fails to show a reasonable probability that a sentencer "reasonably, conscientiously, and impartially applying the standards that govern the decision" would have been dissuaded from an aggravated sentence based on the minor criminal history and the additional evidence of mental illness.

This claim is without merit and must be denied.

## G.  SUMMARY

Petitioner has procedurally defaulted her state remedies on her claims in Grounds 4, 5A, 6A, 6B, 7A, 7B, 8A, 8B, and 9, and shows no cause and prejudice or actual innocence to avoid her procedural default. These claims must be dismissed with prejudice.

Petitioner's claims in Grounds 1, 2, 3, and 5B are without merit and must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED:**

(A) Grounds 4, 5A, 6A, 6B, 7A, 7B, 8A, 8B, and 9 of Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 21) be **DISMISSED WITH PREJUDICE**.

(B) The remainder of Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 21), including Grounds 1, 2, 3, and 5B be **DENIED.**

(C) To the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED** .

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

However, pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall

have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: August 5, 2024

22-8192r RR 24 01 18 on HC.docx

James F. Metcalf
United States Magistrate Judge